**Marcus Bernard THOMPSON, Appellant,**

v.

**The STATE of Texas.**

No. 1532–98.

Court of Criminal Appeals of Texas.

Oct. 13, 1999.

---

12. *See* TEX.R.APP. P. 59.1.

Brian W. Wice, Houston, for appellant.

Eric Kugler, Assist. DA, Houston, Matthew Paul, State's Atty., Austin, for State.

## OPINION

MANSFIELD, J., delivered the opinion of the Court in which McCORMICK, P.J., and KELLER, HOLLAND, WOMACK, and KEASLER, J.J., joined.

Appellant, Marcus Bernard Thompson, was charged by indictment with the murder of Michael Wagner. A jury determined appellant was guilty, and he was sentenced to twenty years imprisonment.[1] An appeal was filed with the Fourteenth Court of Appeals claiming, among other alleged errors, that trial counsel provided ineffective assistance and thus violated appellant's Sixth Amendment right to counsel. Specifically, appellant argued his trial counsel was ineffective for the single error of failing to object and request a mistrial after the introduction of testimony already declared inadmissible hearsay. The Court of Appeals agreed with appellant, reversed the trial court's judgment, and remanded the cause for a new trial. This Court granted the State's petition for discretionary review to determine whether the Court of Appeals erred by addressing appellant's claim of ineffective counsel, and also whether the Court of Appeals erred in determining that appellant successfully proved his trial counsel's performance was deficient, and that, but for this deficient performance, the result of the proceeding would have been different.

### The Relevant Facts

The evidence introduced at trial established the following events, which occurred in Harris County, on the evening of June 8, 1994. Stacy Pierre and his girlfriend, Amanda Williams, encountered a group of individuals, appellant included, engaged in

---

1. At the time of the murder, appellant was on deferred adjudication community supervision after pleading guilty to possession of cocaine weighing less than 28 grams. The trial court adjudicated guilt on this matter and subsequently assessed punishment for that offense at twenty years confinement. Both sentences were to run concurrently.

an illegal dice game. Pierre opted to participate while Williams waited inside the couple's car. As the betting progressed, members of the crowd grew agitated, and Pierre began to fear for his own well-being. He was contemplating the safest way to leave when he saw Michael Wagner, a friend, driving by the game. Pierre flagged Wagner down and asked if he would remain in the area. Wagner agreed and joined Williams in Pierre's car. Pierre's worries were realized when appellant grew angry over the amount of Pierre's final bet, and the game turned into a physical confrontation involving appellant and several individuals. One assailant struck Pierre at least once in the head, but Pierre made his way to the car where Williams and Wagner waited. Wagner, who was in the front passenger's seat, exited the vehicle to provide Pierre the opportunity to climb into the back seat. With Pierre finally in the car, Wagner had resumed his seat just before a bullet was fired through the car's windshield and struck Wagner in the chest. Pierre testified at trial that it was appellant who stood in front of the car and fired one shot from what "looked sort of like a nine millimeter or an Uzi." As Wagner collapsed forward, Pierre ordered Williams to drive off, and she complied. Not before several hours had passed did Pierre and Williams obtain emergency medical intervention. By that time, however, Wagner was already dead.

Successful prosecution ·of the case against appellant was wholly dependent upon the testimony of Stacy Pierre. Only he could place appellant at the crime scene, firing a gun at the victim. Physical evidence was scarce, and what did exist did not directly implicate appellant as the shooter. In fact, the available physical evidence tended to impeach portions of Pierre's version of the events that night. In the street, where appellant was alleged to have been standing when he fired the gun, crime scene technicians recovered five unspent rounds from a nine millimeter weapon, the same caliber bullet recovered from the victim's body. Also discovered in the same general area was one unspent .25 caliber round, consistent with the caliber gun Pierre admitted he possessed that night. Additionally, inside Pierre's car, behind the driver's seat, was found the spent casing of the same type of .25 caliber bullet. On cross-examination, Pierre admitted that his girlfriend, Amanda Williams, was holding his gun at some point before or during the altercation, but Pierre consistently testified that he heard only a single shot fired that night, and it was fired by appellant.[2]

During its direct examination of Sergeant Eugene Yanchak, the lead investigator in this homicide, the State attempted to establish that appellant was identified as the shooter by two non-testifying eyewitnesses. At this stage of trial is when defense counsel's alleged error occurred:

PROSECUTOR: And did you show that photo spread to a witness by the name of Lenora Choice?

WITNESS: Yes, ma'am.

PROSECUTOR: Was she able to—

DEFENSE COUNSEL: I'm gonna object, Your Honor, it calls for hearsay.

PROSECUTOR: I haven't asked the question yet. And he's allowed to say what it is, in fact, the witness did. We're not asking him to say what she said. It's not hearsay, whether or not she was able to make a positive identification.

TRIAL COURT: Wouldn't that be back door hearsay?

DEFENSE COUNSEL: That's exactly what it is, Judge.

TRIAL COURT: I'll sustain the objection.

Despite the successful objection, the State persisted with its same line of ques-

---

2. Although it was established that both Pierre and the victim possessed handguns that night, crime scene technicians recovered only one of these weapons. Pierre could also not explain how the second gun disappeared.

tioning and prompted another reaction from defense counsel:

PROSECUTOR: Did you show the witness, Lenora Choice, a photo array?

WITNESS: Yes, ma'am.

PROSECUTOR: And what instructions did you give her when you showed her those photographs?

DEFENSE COUNSEL: Your Honor, may we approach the bench?

TRIAL COURT: Yes.

DEFENSE COUNSEL: Your Honor, unless I'm mistaken, I believe, you sustained my objection to her attempt to try to get in the fact that he showed the photo array to someone, and that person may have positively identified my client. She's trying to get the exact same thing. And she's just trying to back door by asking him those questions. And it's exactly the same thing that I'm objecting to.

This discussion at the bench continued with the trial court judge again sustaining defense counsel's objection that this was an attempt to elicit inadmissible hearsay. The prosecutor continued her direct examination of the witness:

PROSECUTOR: What instructions did you give— what did you tell the witness, Lenora Choice, about the photographs that you were about to show her.

WITNESS: If she could positive— if she could identify the defendant or the suspect.

PROSECUTOR: And did you additionally show these photographs to a witness, Amanda Williams?

WITNESS: Yes, ma'am.

PROSECUTOR: What instructions did you give her?

WITNESS: Same instructions.

PROSECUTOR: And did you continue after— after that— in your investigation?

WITNESS: Ma'am?

PROSECUTOR: Did you continue your investigation following that?

WITNESS: Yes, ma'am.

PROSECUTOR: Were there any other suspects that you investigated?

WITNESS: No, ma'am.

PROSECUTOR: Did any information come to you to make you believe that there were any other suspects in this case?

WITNESS: No, ma'am.

For reasons not apparent from the trial record or explained after trial, counsel for appellant lodged no objection at this point.

During closing arguments, appellant's trial counsel resumed his objections concerning this testimony after it appeared the State was going to broach the subject of what the non-testifying witnesses told investigators:

PROSECUTOR: ... If you believe the testimony of Stacy Pierre, that was corroborated by the physical evidence and the other investigation— you remember Sergeant Yanchak told you, I spoke to witnesses—

DEFENSE COUNSEL: I'm gonna object, Your Honor. May we approach the bench?

TRIAL COURT: Yes.

DEFENSE COUNSEL: Judge, over and over again she is violating the rules of evidence.

TRIAL COURT: Wait a second. What's the objection? She's talking about what Sergeant Yanchak said.

DEFENSE COUNSEL: That he interviewed other witnesses. What else is she gonna talk about?

TRIAL COURT: *That's right, that's inadmissible.* What did Sergeant— wait—

PROSECUTOR: That evidence is before the jury. He's trying to anticipate what I'm gonna say.

TRIAL COURT: All right. I'll overrule it. Objection is overruled at this point.

Although defense counsel's objection prevented the prosecutor from reiterating

the inadmissible hearsay testimony, the identification of appellant by the non-testifying witnesses was apparently on the jurors' minds. Roughly two hours into deliberations, jurors sent out a note asking for the testimony of Sergeant Yanchak "regarding pictures of the lineup ... [in which] he gave the names of two other people other than Stacy Pierre that also picked out [appellant]." Defense counsel objected and requested a mistrial on the grounds the jury was attempting to consider inadmissible hearsay. In response, the trial court replied, "[A]t one point you did raise an objection, and that was granted. And then there was further testimony to which you did not raise an objection. Your request for a mistrial is denied." Turning its attention to the jury note, the trial court responded to the jury request for Sergeant Yanchak's testimony by replying that "the Court Reporter has reviewed the testimony and not found testimony that corresponds to your request." After ten hours of deliberation over a two day period, the jury returned its guilty verdict. Appellant filed an appeal.

In a published opinion, the Court of Appeals reversed the conviction on the ground appellant received ineffective assistance of counsel. *Thompson v. State*, 981 S.W.2d 319 (Tex.App.—Houston [14th Dist.] 1998). In its opinion the court specifically held that "[a] lawyer may well choose not to object to hearsay or other inadmissible evidence if it potentially enhances his client's defense or at least does not seriously prejudice it. Such is not the case here, however." *Id.* at 324. The State filed its petition for discretionary review claiming the appellate court erred in its analysis. This Court agreed to address three of the four grounds for review proffered by the State,[3] specifically, to determine (1) whether it was error for the Court of Appeals to address the ineffec-

tiveness claim "because there was no evidence in the record of trial counsel's strategy in conflict with decisions from this Court," (2) whether the Court of Appeals erred in holding that trial counsel's performance fell below an objective standard of reasonableness, and (3) whether the Court of Appeals erred in holding that "but for counsel's unprofessional errors, the result of the proceedings would have been different." For the reasons provided below, we will reverse the decision of the Court of Appeals.

### Applicable Case Law

Texas courts adhere, as we must, to the United States Supreme Court's two-pronged *Strickland*[4] test to determine whether counsel's representation was inadequate so as to violate a defendant's Sixth Amendment right to counsel. *Hernandez v. State*, 726 S.W.2d 53, 55 (Tex.Crim.App. 1986). The defendant must first show that counsel's performance was deficient, i.e., that his assistance fell below an objective standard of reasonableness. *McFarland v. State*, 928 S.W.2d 482, 500 (Tex.Crim. App.1996), *cert. denied*, 519 U.S. 1119, 117 S.Ct. 966, 136 L.Ed.2d 851 (1997); *Ex Parte Menchaca*, 854 S.W.2d 128, 131 (Tex.Crim.App.1993). Second, assuming appellant has demonstrated deficient assistance, it is necessary to affirmatively prove prejudice. *McFarland v. State*, 928 S.W.2d at 500. In other words, appellant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Hernandez v. State*, 726 S.W.2d at 55. This two-pronged test is the benchmark for judging whether counsel's conduct so undermined the proper functioning of the adversarial process

---

**3.** This Court refused to grant the State's ground for review arguing that the elicited testimony did not, in fact, amount to "backdoor" hearsay. For purposes of this appeal, therefore, we will abide by the Court of Ap-

peals' decision that this testimony was inadmissible.

**4.** *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

that the trial cannot be relied on as having produced a reliable result. *McFarland v. State*, 845 S.W.2d 824, 843 (Tex.Crim.App. 1992), *cert. denied*, 508 U.S. 963, 113 S.Ct. 2937, 124 L.Ed.2d 686 (1993).

 The assessment of whether a defendant received effective assistance of counsel must be made according to the facts of each case. *Ex parte Scott*, 581 S.W.2d 181, 182 (Tex.Crim.App.1979). Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *McFarland v. State*, 928 S.W.2d at 500. Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. *Ibid.* Absent both showings an appellate court cannot conclude the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. *Ex parte Menchaca*, 854 S.W.2d at 131. Appellant bears the burden of proving by a preponderance of the evidence that counsel was ineffective. *Cannon v. State*, 668 S.W.2d 401, 403 (Tex.Crim.App.1984). An appellate court looks to the totality of the representation and the particular circumstances of each case in evaluating the effectiveness of counsel. *Ex Parte Felton*, 815 S.W.2d 733, 735 (Tex.Crim.App.1991). However, while this Court has been hesitant to "designate any error as per se ineffective assistance of counsel as a matter of law," it is possible that a single egregious error of omission or commission by appellant's counsel constitutes ineffective assistance. *Jackson v. State*, 766 S.W.2d 504, 508 (Tex. Crim.App.1985) (failure of trial counsel to advise appellant that judge should assess punishment amounted to ineffective assistance of counsel) (modified on other grounds on remand from U.S. Supreme Court, *Jackson v. State*, 766 S.W.2d 518

(Tex.Crim.App.1988)). See also *Ex parte Felton*, 815 S.W.2d at 735 (failure to challenge a void prior conviction used to enhance punishment rendered counsel ineffective). This position finds support in opinions of the United States Supreme Court, which has also held that a single egregious error can sufficiently demonstrate ineffective assistance of counsel. *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986); *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 2046 n. 20, 80 L.Ed.2d 657 (1984). When handed the task of determining the validity of a defendant's claim of ineffective assistance of counsel, any judicial review must be highly deferential to trial counsel and avoid the deleterious effects of hindsight. *Ingham v. State*, 679 S.W.2d 503, 509 (Tex.Crim.App.1984). There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984); *Jackson v. State*, 877 S.W.2d 768, 771 (Tex.Crim.App. 1994).

### Analysis

 In the case at bar, the record that appellant brought to the Court of Appeals failed to rebut this strong presumption of reasonable counsel, and, therefore, we hold that the Court of Appeals erred in concluding counsel was ineffective based on the record before it. A substantial risk of failure accompanies an appellant's claim of ineffective assistance of counsel on direct appeal. Rarely will a reviewing court be provided the opportunity to make its determination on direct appeal with a record capable of providing a fair evaluation of the merits of the claim involving such a serious allegation.[5] In the majority of in-

5. Legal scholars have recognized that direct appeal is often an inappropriate forum to bring this type of claim. "The record in a direct appeal may well contain a less than adequate inquiry into possible tactical reasons for various actions or omissions by counsel

and may lack completely trial counsel's own explanations for his actions or inactions." *George E. Dix and Robert O. Dawson*, 41 Texas Practice: Criminal Practice and Procedure § 24.94 (1995). "If a defendant nevertheless chooses this vehicle, he should take special

stances, the record on direct appeal is simply undeveloped and cannot adequately reflect the failings of trial counsel. *Jackson v. State*, 973 S.W.2d 954, 957 (Tex. Crim.App.1998). To defeat the presumption of reasonable professional assistance, "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *McFarland v. State*, 928 S.W.2d at 500. "Indeed in a case such as this, where the alleged derelictions primarily are errors of omission de hors the record rather than commission revealed in the trial record, collateral attack may be the vehicle by which a thorough and detailed examination of alleged ineffectiveness may be developed and spread upon a record." *Jackson v. State*, 973 S.W.2d at 957.[6]

The record in the case at bar is silent as to why appellant's trial counsel failed to object to the State's persistent attempts to elicit inadmissible hearsay. Therefore, appellant has failed to rebut the presumption this was a reasonable decision. "Failure to make the required showing of ... deficient performance ... defeats the ineffectiveness claim." *Strickland v. Washington*, 104 S.Ct. at 2071. An appellate court should be especially hesitant to declare counsel ineffective based upon a single alleged miscalculation during what amounts to otherwise satisfactory representation, especially when the record provides no discernible explanation of the motivation behind counsel's actions— whether those actions were of strategic design or the result of negligent conduct. In the instant case, the record provides no reference to explain why counsel chose not to object, or failed to object, when the prosecutor doggedly pursued the introduction of inadmissible hearsay. We do not agree with the Court of Appeals' apparent

holding that this failure to act amounted to an error sufficiently egregious to satisfy the first prong of *Strickland* as a matter of law. It is possible, given the artful questions employed by the prosecutor, appellant's counsel *at that moment* may have reasonably decided that the testimony was not inadmissible and an objection was not appropriate. For an undetermined reason, counsel did not object, and only further inquiry will provide the information necessary to make the proper determination whether he provided the effective assistance envisioned under the Sixth Amendment.

We are not deciding on this direct appeal, therefore, that appellant did or did not receive the effective assistance of counsel during trial. Instead, we are unwilling to affirm the Court of Appeals conclusion that, with the record provided, appellant successfully defeated the strong presumption that the decisions of counsel during trial fell within the wide range of reasonable professional assistance. See *Strickland v. Washington*, 104 S.Ct. at 2065; *Delrio v. State*, 840 S.W.2d 443, 447 (Tex. Crim.App.1992).

Recourse for appellant's claim is still available. This Court has held that the general doctrine that forbids an application for writ of habeas corpus after direct appeal has addressed the issue does not apply in these situations, and appellant can resubmit his claim via an application for writ of habeas corpus. See *Oldham v. State*, 977 S.W.2d 354, 363 (Tex.Crim.App. 1998), *cert. denied*, 525 U.S. 1181, 119 S.Ct. 1121, 143 L.Ed.2d 116 (1999); *Ex Parte Torres*, 943 S.W.2d 469, 475 (Tex.Crim. App.1997). This would provide an opportunity to conduct a dedicated hearing to consider the facts, circumstances, and rationale behind counsel's actions at that

---

care to assure that the record contains all available information supporting his claim." *Dix and Dawson* § 24.95.

**6.** This opinion should not be read as a declaration that no claim of ineffective assistance

of counsel can be brought on direct appeal. However, in the vast majority of cases, the undeveloped record on direct appeal will be insufficient for an appellant to satisfy the dual prongs of *Strickland*.

juncture of trial. Specifically, a hearing would allow trial counsel himself to explain why no objection was voiced during the proceedings.

In sum, the evidence in the record, as it exists, is insufficient to support the conclusion reached by the Court of Appeals. More precisely, the Court of Appeals' application of the *Strickland* test was tainted because it failed to take into account the strong presumption that counsel performed within reasonable standards, a presumption that the evidence in the available record was unable to overcome. We reverse the judgment of that court and affirm appellant's conviction.

MEYERS, J., delivered a dissenting opinion in which PRICE and JOHNSON, J.J., joined.

MEYERS, J., dissents with an opinion, in which PRICE and JOHNSON, J.J., join.

We granted the State's Petition for Discretionary Review in order to address three of the four grounds raised. The Court's opinion reaches only the first question on which we granted review—that is, whether the Court of Appeals erred in failing to apply a presumption of objectively reasonable conduct where there was "no evidence in the record of counsel's trial strategy." State's Brief at 6. In reaching its conclusion, the Court emphasizes the caution an appellate court must exercise when determining whether counsel's "actions were of strategic design or the result of negligent conduct." *Ante*, op. at 814.[1] The Court then decides that without counsel himself having explained why he voiced no objection to the hearsay evidence, the record is simply insufficient to "successful-

ly defeat[ ] the strong presumption that the decisions of counsel during trial fell within the wide range of reasonable professional assistance." *Id.* at 814 (citations omitted).

The only evidence that the Court suggests is lacking from the record are trial counsel's own subjective reasons (or lack thereof) for failing to object to Sergeant Yanchak's hearsay testimony. *Id.* at 814. The Court holds that the record's silence on this point prevents us from discerning "the motivation behind counsel's actions." *Id.* In other words, the Court indicates that, given the state of the record, it cannot determine by a preponderance of the evidence whether counsel's failure to object was the result of some unapparent strategic decision. But this approach requires that we ignore an abundance of circumstantial evidence indicating that counsel's omission was not the result of a deliberate decision. Thus, while counsel's own statement regarding whether his omission was the product of "trial strategy" would be helpful in evaluating appellant's claim, in this case such evidence is not a necessary prerequisite to an analysis of whether the error complained of met an "objective standard of reasonableness." *See Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).

Although not mentioned by the majority, in *Vasquez v. State*, 830 S.W.2d 948, 950 (Tex.Crim.App.1992) (per curiam), this Court reviewed a claim of ineffective assistance of counsel which was postured in a manner similar to the case at bar. Specifically, counsel had failed to request a jury instruction on the statutory defense of ne-

---

1. The Supreme Court in *Strickland* was adamant that appellate review of counsel's performance be highly deferential: "It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unrea-

sonable." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. Nevertheless, the "strong presumption" that counsel employed reasonable professional judgment in acting as he did is rebuttable. Specifically, appellant is required to prove by a preponderance of the evidence that counsel was ineffective. *See Cannon v. State*, 668 S.W.2d 401, 403 (Tex.Crim.App. 1984).

cessity and the record was silent as to whether the challenged action was the product of "trial strategy." *Id.* Nevertheless, the Court concluded that counsel's performance was "clearly deficient." *Id.* at 951. In reaching its conclusion, the Court made the following statement: "Although *Strickland* mandates that we should not second-guess trial strategy, we state without hesitation that the failure to seek an instruction on necessity would not have been acceptable trial strategy under the facts of this case." *Id.* at 950 n. 3. Therefore, even in the face of a record which is "silent" as to counsel's subjective trial strategy, appellant will have satisfied his burden by a preponderance of the evidence where the record otherwise reflects that counsel's omission would have been unacceptable *regardless* of any trial strategy.[2]

The Court of Appeals did not err in concluding that the record, although silent as to trial counsel's personal thought process, was otherwise sufficient to overcome the presumption of reasonable professional assistance. There is adequate evidence to conclude that counsel's failure to object was not predicated on trial strategy. The record shows that counsel objected a total of three times in his attempt to prevent the disputed testimony from being heard by the jury. The first two times, counsel's hearsay objection was sustained by the

trial court. Nevertheless, the prosecutor continued to inquire about the substance of the out-of-court statements by using different forms of the same question. Ultimately, the hearsay was admitted without objection. During closing arguments, trial counsel again objected when the prosecutor began to argue that the hearsay statements bolstered the State's other identification evidence. The trial court overruled the objection, apparently on the grounds that the evidence was already before the jury.

While it is conceivable that counsel had some unapparent reason for failing to object when the prosecutor finally elicited the hearsay testimony, it is inconceivable that any such reason would fall within the spectrum of objectively reasonable trial strategy.[3] As the Court of Appeals noted, this is not a case where counsel could reasonably conclude that the hearsay evidence "potentially enhance[d] his client's defense or at least [did] not seriously prejudice it." *Thompson v. State*, 981 S.W.2d 319, 324 (Tex.App.—Houston [14th Dist.] 1998). In fact, the hearsay evidence was potentially seriously damaging given its tendency to bolster the relatively weak identification evidence. Counsel clearly recognized this fact and had twice been successful in challenging its admissibility. Thus, while we do not have counsel's own statement as to why he failed to object

---

**2.** *Vasquez*'s conclusion is consistent with the focus of the first prong of *Strickland*—that is, "whether, in light of all the circumstances, the *identified* acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066. This test sets forth an *objective* inquiry and does not predicate a conclusion that counsel was ineffective on counsel's subjective motivations. In other words, the focus of an ineffective assistance challenge should be on whether counsel rendered reasonably competent assistance and *not* on whether counsel may had some peculiar reason for doing as he did. If counsel's performance is unreasonable "under prevailing professional norms," *Id.*, 466 U.S. at 688, 104 S.Ct. at 2065, justifications of "trial strategy" will not save the conviction.

**3.** Neither the State nor the majority set forth a plausible reason for how counsel's omission could have been of strategic design. The State, for example, argues that counsel may have sought to avoid drawing further attention to Sergeant Yanchak's testimony. This makes no sense, however, given that the hearsay had been successfully challenged up until that point. By objecting, counsel would have managed to keep the testimony out entirely. For its part, the majority suggests that it may have been reasonable for counsel simply to have missed the objectionable material given the "artful questions employed by the prosecutor." *Ante*, op. at 814. But this approach presupposes that counsel had *no strategic reason* for performing as he did and makes evidence of counsel's own decision-making irrelevant.

when the prosecutor successfully elicited the hearsay testimony, the surrounding circumstances present sufficient evidence to overcome the *Strickland* presumption that counsel's omission was the result of a calculated decision based on a reasonable trial strategy.

The Court's opinion effectively requires that an appellant present direct evidence of trial counsel's subjective motivations (or lack thereof) in order to overcome the presumption of objectively reasonable conduct on direct appeal.[4] Because the record is sufficient for the Court of Appeals to conclude that counsel's actions were not presumptively reasonable under the facts of this case, the State's first ground for review should be overruled. The remaining two grounds simply ask us to substitute our own judgment on ultimate questions of fact for that of the Court of Appeals. The appellate court's opinion fairly addresses the issues raised on appeal and evaluates those issues under the proper legal standards. Even if our own decision might be different on the remaining questions presented, we should defer to the lower court's application of law to fact where, as here, the evidence is sufficient to support their conclusion. The judgment of the Court of Appeals should be affirmed. I dissent.

---

4. In a great majority of cases, the record on direct appeal will not contain an explicit statement on the part of trial counsel explaining the reasons why he *failed* to object. Therefore, by requiring the record to contain this information, the Court's opinion effectively short-circuits virtually any attempt to raise this type of claim on direct appeal. This approach presents at least two additional practical problems. First, trial courts will be burdened with hearings in subsequent writ applications when the evidence sought is unnecessary to the ultimate disposition of the case. Second, an indigent defendant whose ineffective assistance claim is denied on direct review because of an "insufficient record" is left to attack the conviction collaterally without many of the resources, such as the assistance of appointed counsel and a free record, available on direct appeal. The indigent habeas petitioner would be left to pursue this important constitutional claim *pro se*.