Opinion issued May 23, 2002











 





In The

Court of Appeals

For The

First District of Texas






NO. 01-00-01262-CR

____________


ORLANDO REYES, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 180th District Court

Harris County, Texas

Trial Court Cause No. 828584






O P I N I O N

 Appellant, Orlando Reyes, pleaded guilty, without an agreed punishment
recommendation from the State, to aggravated sexual assault of a child. After a pre-sentence investigation (PSI) hearing, the trial court found appellant guilty and
sentenced him to 45 years confinement. Appellant filed a motion for new trial and
a supplemental motion for new trial arguing he had been denied effective assistance
of counsel. The trial court denied both motions without a hearing.

 In two issues, appellant challenges (1) the trial court's refusal to conduct a
hearing on his motion for new trial, which was based on a claim of ineffective
assistance of counsel, and (2) its denial of his motion. We previously sustained
appellant's first issue and, by our Order of August 2, 2001, abated this appeal for the
trial court to conduct a hearing on appellant's motions for new trial. A hearing was
conducted, and a record of those proceedings and supplemental briefs from the parties
are now before this Court. (1) We now address appellant's second issue.

 We affirm.

Facts and Procedural Background


 At the motion for new trial hearing, appellant's former trial counsel, Chad
Henderson, testified he had been a licensed attorney for over four years and had
defended more than 300 criminal cases, including more than 50 felony cases. At the
time he undertook the representation of appellant, Henderson had represented only
one client in a trial for aggravated sexual assault of a child.

 Appellant, who was 38 years old at the time he was charged, told Henderson
he did not want to try the case to a jury. Prior to appellant's plea of guilty, Henderson
"went over all the admonishments in detail" with appellant. Henderson explained
"each and every form that [appellant] filled out." In doing so, Henderson did not
notice any indication that appellant did not understand his legal rights and the legal
effect of entering a guilty plea.

 Henderson fully advised appellant of the charges against him, which, according
to the probable cause affidavit prepared in November of 1999 by Pasadena Police
Officer T.K. Brinson, were that, on or about December 1, 1997, appellant had "put
his penis inside [the complainant's] anus" and had "touched [the complainant] on her
vagina many times before that with his hand." (2) As he discussed the charges with
appellant, Henderson described them as alleging that appellant had placed his penis
in the complainant's rear and "wiggled it around." He did not ask appellant whether
appellant "penetrated the victim's anus." Appellant did not admit to penetrating the
complainant's anus but did not deny any of the charges against him. According to
Henderson, appellant told him, "I should never have taken it out on [the
complainant]" and "[She] didn't deserve that." Appellant also told Henderson the
incident occurred "[B]ecause of the way my ex-wife treated me." Based on his
conversations with appellant concerning the allegations, Henderson believed a factual
basis existed for appellant's entry of a guilty plea. (3) Henderson recalled that at no time
during the plea proceedings did appellant deny the charges against him. (4)

 Henderson stated he explained to appellant that the range of punishment for
aggravated sexual assault was five to 99 years imprisonment. Henderson recalled that
he also advised appellant that, although he was eligible for it, it was unlikely
appellant would receive probation for this type of offense, because the State would
not recommend it to the trial court, and because Henderson felt it was unlikely the
judge or a jury would assess it as punishment in this case. During plea negotiations,
the lowest punishment recommendation by the State was 20 years confinement, and
Henderson testified he repeatedly and strongly urged appellant to accept this
recommended punishment. He told appellant that, in his opinion, the trial court
would probably assess a higher punishment, and he urged appellant not to request a
PSI hearing. Appellant refused the State's offer as to punishment and refused to go
to trial.

 Although Henderson did not subpoena any witnesses to the punishment
hearing, he asked appellant to bring some family members to testify as character
witnesses. All of appellant's family members in attendance, except his brother,
declined to testify. At the hearing, Henderson questioned appellant concerning
whether he could or would pay for counseling for the victim but did not specifically
argue to the court that it was "in the best interest of victim" for appellant to be given
probation.

 Henderson recalled he was surprised when, during the sentencing hearing,
appellant denied penetrating the complainant's anus. Following appellant's denial,
Henderson did not request that the trial court permit appellant to withdraw his plea,
but attempted to get appellant to admit his guilt, and explained his strategy as follows:

 I looked at it again as the PSI is taking responsibility [sic]. Now if you
plead guilty, like I explained to him, you plead guilty, you are guilty. 
You can't go back after that point in time. And once you plead guilty
you can't get in front of the Judge and say, [']No, I am not guilty
because I didn't do this.['] Because of the PSI you have to take
responsibility and try to let the Court know that you were trying to
correct your wrong, not going to deny it.


 Concerning his investigation of the charges against appellant, Henderson
testified he never talked to the complainant or her mother and never reviewed the
videotaped statements of the complainant or appellant. Henderson did review the
entire contents of the State's file and believed he read the written transcriptions of the
videotaped statements. Henderson testified his investigation was limited because the
case was not going to trial. He explained, "from the beginning, again, [appellant's]
whole position was, [']I want to work it out with the State[']." 

 At the time of the punishment hearing, Henderson did not investigate whether
the complainant's mother had any prior felony convictions. Henderson testified he
would have investigated such information had he been preparing the case for a trial
and had it been likely that the complainant's mother would testify. In Henderson's
opinion,

 [I]f it was a trial, it would have been different. . . . [A] PSI, again, to me,
is all about taking responsibility. I didn't want to put the mother on the
stand and start attacking her. You know, the whole purpose of a PSI
was to really saying [']I did this['] and I - and to take responsibility for
it, not for me to attack the victim or her mother, even though the mother
had a lot of stuff in her background. That's the reason why I didn't feel
it was necessary to have the mother testify. . . . I feel it would have hurt
us as opposed to help us.


 With regard to appellant's competency, Henderson conceded he did not discuss
appellant's medical history with him. Henderson was aware of appellant's limited
ability to read, so he gave no documents to appellant. In Henderson's opinion,
appellant did not appear "retarded," "mentally challenged," or "mentally impaired,"
although appellant did seem "not [as] intelligent as most people." However, he saw
no indication that appellant suffered from any medical condition, nor did appellant
tell Henderson about any such condition. Henderson was not aware that appellant
had sustained a serious head injury in a motorcycle accident in the early 1980s. 
Henderson did not think appellant was sufficiently mentally diminished to call
appellant's competency to the trial court's attention.

 Troy Locklear testified as a witness for appellant at the motion for new trial
hearing. Locklear is an attorney practicing criminal law in Harris County and has
been licensed since 1994. In Locklear's opinion, appellant's case could have been
successfully tried and appellant did not receive effective assistance of counsel. He
based his opinion on the "staleness" of offense, the lack of any medical records
pertaining to the complainant, and the prior criminal history of the complainant's
mother. However, Locklear admitted he had not reviewed the State's file and did not
know whether it contained any medical records pertaining to the complainant. 
Locklear also criticized Henderson for not reviewing the videotaped interviews of the
complainant and appellant, but conceded he had not reviewed either tape and did not
know whether they contained any exculpatory evidence.

 Locklear also testified that he was not present during Henderson's
conversations with appellant and did not know Henderson had attempted to persuade
appellant to take the case to trial or accept the State's offer as to punishment. In
Locklear's opinion, once appellant had denied committing the offense at the
punishment hearing, it was Henderson's "obligation to move to withdraw the plea." 
However, on cross-examination, Locklear conceded that, unlike a motion to withdraw
a plea at an earlier phase of trial, the decision to permit the withdrawal of a guilty plea
at the punishment phase of trial is subject to the discretion of trial court.

 Barbara Ann Reyes, appellant's sister-in-law, testified appellant was "slow"
before he was involved in a motorcycle accident in approximately 1980. Following
the accident, appellant was in a coma for three or four months. After the accident, in
her opinion, appellant was "a lot slower than before" and, as an example, would
become confused when told to get a soda out of a refrigerator door. Barbara testified
she met with appellant and his attorney on the day of the punishment hearing and was
given the impression that appellant would receive probation. She admitted she was
not present for all the conversations between appellant and his counsel. She also
testified appellant was married with children, had been employed earning as much as
$14.50 per hour, had a driver's license, and paid his bills.

 Ruben Reyes, appellant's brother, testified appellant, after failing two grades,
got as far as the ninth grade in school before dropping out. Appellant had been
placed in a "special ed" class because of a learning disability. It was his opinion
appellant had sustained a massive head injury in his motorcycle accident, but he was
not aware of any subsequent brain surgery. Ruben recalled appellant suffered some
problems with his memory following the accident but had gradually recovered. He
testified he did not think appellant's mental condition had recovered fully. He did not
know whether his brother had undergone any treatment for memory loss or
psychiatric problems. Ruben testified that, when he met with appellant and
Henderson before appellant's punishment hearing, Henderson told him he was going
to try to get probation for appellant.

 Appellant testified he dropped out of school before completing the ninth grade,
had a hard time learning, and could read "a little bit." He sustained a head injury and
was in a coma following a motorcycle accident in 1980, but he did not know whether
he suffered any brain damage from that accident. Appellant testified he told
Henderson only that he had been involved in a motorcycle accident and was "real
slow of reading and understanding."

 Appellant testified he never spoke to Henderson at Henderson's office, never
received any mail or copies of legal documents from Henderson, and never discussed
legal strategy with Henderson on the telephone. Appellant could not remember
whether he signed a contract with Henderson for his legal representation. Appellant
discussed his case with Henderson at the courthouse. Appellant testified that, during
his conversations with Henderson, they never discussed the facts of his case, the
function of a jury, or the requirement of unanimity in a jury's "guilty" verdict. 
Appellant admitted Henderson asked him whether he wanted a jury trial. However,
appellant testified he did not know that the decision to request a jury trial was
ultimately his to make.

 Appellant recalled that Henderson had explained the range of punishment for
the offense was five to 99 years. Appellant further testified Henderson informed him
of the State's offer of 20 years as an agreed punishment recommendation. Appellant
refused the recommendation and instructed Henderson to attempt to get him placed
on probation. Appellant identified his signature on a motion for probation filed on
his behalf by Henderson. He could not remember whether Henderson explained the
motion for probation to him.

 Appellant testified Henderson never provided him with a copy of the
indictment in his case. Henderson also never took appellant to view the videotaped
interviews of the complainant and of appellant, despite appellant's requests to see
them.

 Appellant could not remember any "off the record" conversations with
Henderson during the punishment hearing. Appellant denied ever discussing
withdrawing his plea with Henderson. He also denied ever seeing a copy of the PSI
report prepared in his case.

 On cross-examination, appellant admitted he understood the allegations lodged
against him and that "what [he] did was wrong." He also conceded that, if he had not
understood something Henderson attempted to explain to him, he could have asked
for an explanation. Appellant also testified he remembered the trial court admonished
and instructed him concerning the charges against him at the plea proceeding.

 Appellant agreed that his former counsel read the trial court's admonishments
form to him before he signed it, but he recalled his attorney would "read them just
halfway and then he w[ould] start saying 'blah, blah, blah this and that and sign it
right here.'" Appellant initialed the sections of the admonishments form where
Henderson instructed. However, appellant agreed that, because several sections of
the admonishments form did not apply to him and were crossed out, his attorney
could simply have been skipping over the non-applicable portions of that document
when he said "blah, blah, blah."

 Appellant conceded that, sometime after he was charged with this offense, he
told the congregation at his church that he was willing to take responsibility for his
actions and accept whatever punishment was ordered by the trial court. Appellant
admitted that neither his attorney nor anyone else promised him that he would be
placed on probation.

 Appellant did not initially remember being interviewed by the investigator who
prepared the PSI report, but he later admitted he met with someone who asked him
questions about his job, background, previous criminal offenses, and marriage. 
During that interview, appellant recalled he admitted to touching the complainant's
vagina but denied penetrating her anus. 

Ineffective Assistance of Counsel


 In his remaining issue on appeal, appellant argues he was denied effective
assistance of counsel at both the guilt-innocence and punishment phases of trial,
depriving him of his right to effective counsel under both the United States (5) and
Texas (6) constitutions. Specifically, he contends Henderson was ineffective for failing
to (1) ensure he understood the waivers, stipulations, admonishments, and the charges
against him, (2) investigate his claim of innocence, (3) raise the issue of his
competency to stand trial, and (4) "satisfy the professional norms of reasonableness."

 We follow the standard for ineffective assistance of counsel set forth in
Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2066-68 (1984) and
Hernandez v. State, 726 S.W.2d 53, 57 (Tex. Crim App. 1986). The Strickland test
requires an appellant to show (1) counsel's performance was deficient, and (2) the
deficient performance prejudiced or harmed the appellant. Strickland, 466 U.S. at
688, 104 S. Ct. at 2068; Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim. App.
1999). Counsel's performance is deficient if it fell below an objective standard of
reasonableness. Thompson, 9 S.W.3d at 813. An appellant bears the burden of
proving, by a preponderance of the evidence, that counsel was ineffective. Id. An
appellant who has shown deficient performance must then show, beyond a reasonable
probability, that, but for counsel's deficient performance, a different result would
have occurred. Id. A reasonable probability is a probability sufficient to undermine
confidence in the outcome. Id. An appellant must show both of the two prongs to
prevail on a claim of ineffective assistance of counsel. Id. In reviewing counsel's
performance, we look to the totality of the representation to determine the
effectiveness of counsel, indulging a strong presumption that his performance falls
within the wide range of reasonable professional assistance or trial strategy. Id.

Explanation of Waivers, Stipulations, Admonishments, and Charges

 As noted above, appellant contends his former trial counsel did not adequately
explain, or ensure that he understood, the charges against him and the waivers,
stipulations, and admonishments read to him and signed by him.

 Appellant testified Henderson never explained the function of a jury or the
requirement of a unanimous verdict of guilty. Appellant also denied discussing legal
strategy or the facts of his case with Henderson. However, appellant admitted
Henderson asked if appellant wanted a jury trial, explained the applicable range of
punishment, and communicated the State's 20-year punishment recommendation.

 Appellant testified Henderson skipped over portions of the admonishments
form when reading it to him, but admitted that could have been because several
sections of the form did not apply to him and were crossed out. Appellant also
conceded that he could have asked Henderson to explain anything he did not
understand. Appellant further testified the trial court admonished him at the plea
proceeding and informed him of the charges against him. 

 In contrast, Henderson testified he explained "each and every" document
appellant signed, explained the admonishments "in detail," and fully advised
appellant of the charges against him. Henderson described the charges as alleging
appellant had placed his penis in the complainant's rear and "wiggled it around." 
Appellant did not deny the charges and indicated he did not want a jury trial. 
Appellant told Henderson "I should never have taken it out on [the complainant]" and
"[She] didn't deserve that." Appellant also told Henderson the incident occurred
"[B]ecause of the way my ex-wife treated me." Henderson testified he detected no
indication appellant did not understand his legal rights or the effect of entering a
guilty plea. Based on his conversations with appellant concerning the allegations,
Henderson believed a factual basis existed for appellant's entry of a guilty plea. At
no time during the plea proceedings did appellant deny the charges against him.

 Henderson testified that, after explaining the full range of punishment, he urged
appellant to either take the case to a jury trial or accept the State's agreed punishment
recommendation offer, but appellant refused to do either. Henderson advised
appellant it was unlikely he would receive probation for this type of offense and told
appellant that, in his opinion, the trial court would probably assess a higher
punishment.

 Based on the record presented, we conclude appellant has not met his burden
to show his trial counsel's conduct fell below an objective standard of reasonableness
on this issue. Thompson, 9 S.W.3d at 812.

Investigation

 Appellant argues his former trial counsel did not adequately investigate his
"claim of innocence to the charge of penetration," did not review any medical reports,
did not investigate the credibility of the complainant's mother, and did not view the
videotaped interviews of the complainant or appellant.

 At his punishment hearing, appellant denied penetrating the complainant's
anus. However, Henderson testified that, when he explained to appellant the charges
brought against him, appellant did not deny them and told Henderson, "I should never
have taken it out on her," referring to the complainant, and "[the complainant] did not
deserve that." Appellant also instructed Henderson he did not want a jury trial. 
Appellant admitted that, during his plea proceeding, he was admonished and informed
of the charges against him by the trial court yet he did not deny the charges in
entering his guilty plea.

 Further, Henderson explained his strategy at the punishment hearing, in part,
as follows: 

 [O]nce you plead guilty you can't get in front of the Judge and say,
[']No, I am not guilty because I didn't do this.['] Because of the PSI
you have to take responsibility and try to let the Court know that you
were trying to correct your wrong, not going to deny it.


Henderson's expressed strategy was not to attempt to withdraw appellant's guilty
plea, but to try to limit the amount of punishment assessed against appellant by the
trial court. 

 Concerning appellant's claim that Henderson should have reviewed the
complainant's medical records, no evidence was presented that any medical records
pertaining to the complainant were part of the State's file. With regard to
Henderson's investigation of the prior criminal history of the complainant's mother
and the videotaped interviews of the complainant and appellant, Henderson explained
that, had he been preparing the case for trial, he would have acted differently. 
Appellant refused a jury trial and pleaded guilty. Henderson testified he felt it
unnecessary to conduct an investigation of matters he considered irrelevant to the
punishment hearing. Finally, Henderson testified he reviewed the State's entire file,
including transcripts of the videotaped interviews of the complainant and appellant.

 Based on the testimony and the record presented, we conclude appellant has
not met his burden to show his trial counsel's conduct fell below an objective
standard of reasonableness relating to Henderson's investigation of this case. See
Thompson, 9 S.W.3d at 812.

Competency

 Appellant argues his former trial counsel should have raised the issue of his
competency to stand trial.

 Appellant testified he did not tell Henderson he had sustained a brain injury,
only that he had been in a motorcycle accident and was "real slow of reading and
understanding." Henderson testified he perceived appellant's reading difficulty, so
he read and explained to appellant "each and every" document appellant signed. 
Appellant conceded that, if he did not understand something, he could have asked
Henderson for an explanation.

 Henderson testified that, in his opinion, appellant did not seem impaired,
although he described appellant as "not [as] intelligent as most people." He saw no
indication that appellant was suffering from any medical condition and did not think
appellant was sufficiently mentally diminished to call it to the trial court's attention.

 Based on the testimony and the record presented, we conclude appellant has
not met his burden to show his trial counsel's conduct fell below an objective
standard of reasonableness relating to appellant's competency. See Thompson, 9
S.W.3d at 812.

Trial Counsel's Performance

 Appellant asserts that, in general, his former trial counsel's performance "fell
below the professional norms for reasonableness" and caused the negative outcome
of the trial court proceedings. Appellant bases this contention on the opinions
expressed by Troy Locklear at the hearing on appellant's motions for new trial.

 Locklear expressed the opinion that appellant's case could have been
successfully tried because of the "staleness" of offense, the lack of any medical
records pertaining to the complainant, and the prior criminal history of the
complainant's mother. However, Locklear admitted he had not reviewed the State's
file and did not know whether it contained any medical records pertaining to the
complainant. Further, Locklear failed to take into account appellant's decisions to
plead guilty and to forego a jury trial. Locklear also conceded he was not present
during Henderson's conversations with appellant and was not aware Henderson had
attempted to persuade appellant to take the case to trial or accept the State's
punishment offer. Locklear criticized Henderson for not reviewing the videotaped
interviews of the complainant and appellant but conceded he had not reviewed either
tape and did not know whether they contained any exculpatory evidence.

 In Locklear's opinion, once appellant denied committing the offense at the
punishment hearing, it was Henderson's "obligation to move to withdraw the plea." 
However, on cross-examination Locklear conceded that, unlike a motion to withdraw
a plea at an earlier phase of trial, the decision to permit the withdrawal of a guilty plea
at the punishment phase of trial is subject to the discretion of the trial court. See
DeVary v. State, 615 S.W.2d 739, 740 (Tex. Crim. App. 1981); Donovan v. State, 17
S.W.3d 407, 410 (Tex. App.--Houston [1st Dist.] 2000), affirmed, 68 S.W.3d 633,
638 (Tex. Crim. App. 2002) (holding trial court has broad discretion to deny motion
to withdraw plea when raised after case is taken under advisement).

 Based on the testimony and the record presented, we conclude appellant has
not met his burden to show his trial counsel's performance fell below an objective
standard of reasonableness. See Thompson, 9 S.W.3d at 812.


Conclusion


 We conclude the trial court did not err in denying appellant's motion for new
trial, on the grounds of ineffective assistance of counsel, and we overrule appellant's
remaining issue.

 We affirm the judgment of the trial court.





 Terry Jennings

 Justice



Panel consists of Justices Jennings, Radack, and Price. (7)


Do not publish. Tex. R. App. P. 47.
1. This case was reinstated by our Order of November 15, 2001.
2. The complainant, who was eight years old at the time of the assault, is the
daughter of appellant's ex-wife.
3. According to the probable cause affidavit, appellant was interviewed by
Officer Brinson after Brinson took a statement from the complainant, and, in
the interview appellant admitted to touching the complainant on her vagina and
stated he "d[id] not remember putting his penis into the anus of the
Complainant, but that it could have happened."
4. Appellant waived the preparation of a record of the plea proceedings.
5. U.S. Const. amend. VI.
6. Tex. Const. art. I, § 10.
7. The Honorable Frank C. Price, former Justice, Court of Appeals, First District
of Texas at Houston, participating by assignment.