# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-09-00503-CR

**Kenneth Ray Henry, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF BASTROP COUNTY, 21ST JUDICIAL DISTRICT**
**NO. 13,079, HONORABLE CHRISTOPHER DARROW DUGGAN, JUDGE PRESIDING**

### M E M O R A N D U M   O P I N I O N

A jury convicted Kenneth Ray Henry on two counts of aggravated sexual assault. *See* Tex. Penal Code Ann. § 22.021 (West Supp. 2009). The jury assessed punishment at twenty-five years in prison for the first count and at fifty-five years in prison for the second count, and assessed a total fine of $10,000. Henry complains that he was denied effective assistance of counsel. We affirm the judgment of conviction.

On the morning of April 22, 2004, Darla Crider was at her home getting ready for work as usual. After she had finished her shower, an African-American male, later identified as Henry, entered her apartment, covered her face and head with a towel, and forced her into the bedroom onto the bed. He proceeded to penetrate her sexual organ with his finger and with his sexual organ, and then left.

Immediately after she heard the door close, Crider locked the door and called 911. She was taken to St. David's Hospital, where she was examined by a sexual assault nurse examiner (SANE). DNA evidence was collected and matched to a known DNA sample of Henry.

Henry was indicted on two counts of aggravated sexual assault. A jury convicted Henry as charged, and assessed punishment at twenty-five years in prison for the first count and at fifty-five years in prison for the second count. The jury also assessed a total fine of $10,000. In a single issue, Henry argues that he was denied effective assistance of counsel.

We evaluate claims of ineffective assistance of counsel against the standard set forth in *Strickland v. Washington*. *See* 466 U.S. 668, 687 (1984); *Hernandez v. State*, 988 S.W.2d 770, 774 (Tex. Crim. App. 1999). In deciding a claim of ineffective assistance of counsel, we must determine whether an attorney's performance was deficient and, if so, whether that deficiency prejudiced the defense. *Strickland*, 466 U.S. at 687; *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). An attorney's performance is deficient if it falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688; *Thompson*, 9 S.W.3d at 812. Deficient performance is prejudicial when, but for the attorney's unprofessional conduct, there is a reasonable probability that the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694; *Thompson*, 9 S.W.3d at 812. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694; *Thompson*, 9 S.W.3d at 812. In determining whether an attorney's performance was deficient, we apply a strong presumption that the attorney's conduct was within the range of reasonable professional assistance. *Thompson*,

2

9 S.W.3d at 814.  We review the effectiveness of counsel in light of the totality of the representation and the circumstances of each case.  *Id.* at 813.

In most cases, an undeveloped record on direct appeal is insufficient to satisfy the dual prongs of *Strickland* because the reasonableness of counsel's decisions often involves facts not appearing in the appellate record.  *Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003).  Without evidence of the strategy and methods involved concerning counsel's actions at trial, an appellate court should presume a sound trial strategy.  *See Thompson*, 9 S.W.3d at 814.  Where, as here, an allegation of ineffective assistance of counsel is not raised in a motion for new trial, trial counsel has no opportunity to explain his conduct, and absent such opportunity, an appellate court should not find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it."  *See Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)).

Henry argues that his trial counsel "set forth a defensive theory for which he was not prepared, had not investigated, had not sought to secure the presence of necessary witnesses, and which had no plausible basis."  The defensive theory advanced by counsel was that Henry was framed by a one of his former lovers, Tracy McClintock, who had provided a used condom to another unknown African-American male to carry out the sexual assault on Crider.

The state of the evidence provides a framework for our analysis on this point.  Immediately following the attack, Crider reported the incident and was examined.  DNA was collected, and that DNA matched a known sample of Henry's DNA.  Under these circumstances, defense counsel was left with limited means of mounting a defense, means which could be further

limited by information learned from his client, but not revealed to the court. *See* Tex. Disciplinary R. Prof'l Conduct 3.03, *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G app. A (West 2005). While the defense argued by trial counsel was somewhat far-fetched, there is no indication from the record that any other defense was available or more consistent with Henry's sponsored version of the facts.

The theory advanced by trial counsel was presumably developed based on counsel's communications with Henry, as only Henry could know that he had previously been in a relationship with a woman, McClintock, who had allegedly "threatened to have him locked up if he [did]n't come back." Without information in the record to the contrary, we presume counsel advanced this "scorned lover" defensive theory because other possible defensive theories were either less plausible or unavailable based on information known to counsel. At any rate, in the absence of an undeveloped record on appeal, we presume a sound trial strategy—that the defensive theory advanced was, indeed, the most plausible theory available. *See Thompson*, 9 S.W.3d at 814.

Henry also contends that, even if the defensive theory advanced was plausible, counsel was not prepared to present it. According to Henry, counsel had neither properly investigated the theory nor sought to secure the presence of necessary witnesses. Specifically, Henry refers to his alleged scorned lover, McClintock.

In an exchange with the court, trial counsel stated that "in the file, there's been two previous requests for subpoenas that we have not gotten served." This statement is the only evidence on this point. A review of the record sheds no light on why the subpoenas had not "gotten served." In the absence of such evidence, we must presume that defense counsel had a reasonable explanation as to why the subpoenas were never served. *See Goodspeed*, 187 S.W.3d at 392.

4

Even in the absence of a reasonable explanation, we cannot conclude that Henry has satisfied the second prong of *Strickland*—that counsel's failure to secure this witness prejudiced Henry's defense. *See* 466 U.S. at 687. Even if McClintock no longer bore any hostility toward Henry (as a former scorned lover), there is no indication in this record that she would have been willing to admit to having conspired against Henry, as she, herself, would have been subject to criminal prosecution. As the State points out, the best strategy may have been for trial counsel to act exactly as he did:

> i.e. to allow McClintock to remain at large, and thereby limit her persona to that of a phantom character towards which defense counsel could sling proverbial spears without fear of reproach, hoping that in some juror(s) mind a reasonable doubt might emerge.

Again, in the absence of a developed record on appeal, we are required to presume the soundness of such a strategy. *See Thompson*, 9 S.W.3d at 814.

Henry also argues that trial counsel should have objected to the use of the term "victim" by the prosecutor, witnesses, and the district court. Use of this term, Henry argues, was an improper comment on the weight of the evidence and prejudicial.

In support of his argument, Henry relies on *Talkington v. State*, 682 S.W.2d 674, 674-75 (Tex. App.—Eastland 1984, pet. ref'd), in which the court of appeals held that the trial court's use of the word "victim" in the jury charge was an improper comment on the weight of the evidence. In *Talkington*, however, all parties agreed that the sexual intercourse had occurred, and the sole issue was whether or not the complainant had consented. *Id.* at 675. Because the "controversy was whether the complainant was truly a 'victim' or a willing participant," the court's use of the word

victim in the charge was an improper comment on the weight of the evidence. *Id.* Here, Henry did not argue that the sexual intercourse was consensual. Rather the controversy centered around the identity of the perpetrator. It was undisputed that Crider was, in fact, the victim of a crime. Thus, the use of the word "victim" to refer to Crider was neither prejudicial nor an improper comment on the weight of the evidence.

In addition, the trial court's use of the word "victim" in *Talkington* was in the application paragraph of the jury charge, in direct reference to the complainant. Here, the use of the word "victim" about which Henry complained was in an instruction paragraph, by which the district court informed the jury of the applicable law without reference to the specific case or parties. The language used by the court directly tracked the applicable criminal statute and was not, therefore, prejudicial or an improper comment on the weight of the evidence. *See* Tex. Penal Code Ann. § 22.021; *Martinez v. State*, 924 S.W.2d 693, 699 (Tex. Crim. App. 1996) ("Following the law as it is set out by the Texas Legislature will not be deemed error on the part of a trial judge.").

Having found no merit to Henry's claim that he was denied effective assistance of counsel, we overrule his sole issue and affirm the judgment of conviction.

_____

G. Alan Waldrop, Justice

Before Chief Justice Jones, Justices Pemberton and Waldrop

Affirmed

Filed: August 4, 2010

Do Not Publish

6