

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-19-00405-CR

———————————————

LEONARDO VILLARREAL, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 16th District Court
Denton County, Texas
Trial Court No. F18-1320-16

---

Before Kerr, Birdwell, and Bassel, JJ.
Memorandum Opinion by Justice Kerr

After an evening of drinking, Appellant Leonardo Villarreal beat Kenneth George with a large wooden stick in a bar parking lot. Villarreal's friend Clayton Auxier then stomped on George while he lay on the ground injured. Four days later, George died as a result of internal bleeding from a lacerated spleen. Villarreal and Auxier were each charged with murder and tried separately; a jury found Villarreal guilty of the lesser-included offense of aggravated assault causing serious bodily injury and assessed a 15-year sentence. *See* Tex. Penal Code Ann. § 22.02(a)(1).

He appeals his conviction, arguing that the trial court erred by denying his request for a directed verdict and by allowing the submission of an uncharged lesser-included offense. We disagree with Villarreal, decline his invitation to "drastically modif[y]" applicable law established by statute and the Court of Criminal Appeals, and affirm the trial court's judgment.

## Background

The fight took place in the parking lot of Jack's Tavern in Denton around 9:30 p.m. According to witness accounts and surveillance video of the scene, Villarreal and Auxier were sitting in Auxier's truck when George left the bar and began walking to his own truck, which was parked three spaces from Auxier's.

It's unclear what sparked the altercation, but after George, Auxier, and Villarreal exchanged words, George struck and shattered Auxier's driver's side window with a large stick. He then went to the front of Auxier's truck with the stick

still in his hands and began to move quickly toward the bar's entrance, at which point Villarreal ran after him, took the stick away, and hit George three times with it, knocking him to the ground. While George was on the ground, Auxier forcefully stomped on him with steel-toed workboots. Because a truck partially blocked the view of the surveillance camera, where each blow landed on George's body cannot be seen.

When police arrived, Villarreal explained his version of events, omitting his use of the large stick and instead claiming he had struck George in the face and "in the kidney" with his hands. He denied Auxier's involvement.

George was taken to the hospital and treated for severe injuries to his face, including multiple fractures of his eye socket and cheekbone that would likely require surgery. He never mentioned any pain or injury to his abdomen or side, and he was discharged early the next morning. Four days later, George died as a result of internal bleeding from a five-inch laceration on his spleen.

At trial, Villarreal did not deny striking George but argued self-defense, attempted to divert blame to Auxier, and argued the absence of direct proof that his strikes caused George's death. At the close of the State's case, he sought a directed verdict on the murder charge based on the lack of direct evidence that he delivered the fatal, spleen-lacerating blow. The trial court denied his motion. The State sought and was granted, over Villarreal's objection, a jury question on aggravated assault causing serious bodily injury. The jury did not find Villarreal guilty on the murder

charge and instead found him guilty of aggravated assault causing serious bodily injury. The trial court entered judgment accordingly, and this appeal followed.

## Discussion

Villarreal presents his arguments as a single issue with two premises: that the trial court erred by denying his motion for a directed verdict and by allowing the submission of a lesser-included offense, which violated his constitutional rights and deprived him of effective counsel.[1]

Generally, we review a directed-verdict complaint as a challenge to evidentiary sufficiency. *See Williams v. State*, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996). But in this case, such a review is unnecessary because the denial of Villarreal's request for a directed verdict on the charged offense of murder was without a doubt harmless because the jury declined to find him guilty of murder. *See Taylor v. State*, No. 11-18-00348-CR, 2020 WL 6498016, at *1 (Tex. App.—Eastland Nov. 5, 2020, no pet.); *Jones v. State*, 850 S.W.2d 236, 239 (Tex. App.—Fort Worth 1993, no pet.). By the jury's effectively acquitting Villarreal of murder, there can be no harm as a result of the trial court's denying his request for a directed verdict on that charge.

---

[1]Villarreal presented his issue as follows:

> The court erred in failing to grant the Appellant's request for a directed verdict and allowing the submission of an uncharged lesser-included offense at the request of the State which, thereby, allowed the State to deprive Appellant of a fundamentally fair trial, due process, due course of law, allowed him to be found guilty of an uncharged offense and, in some measure, ultimately rendered counsel ineffective.

4

But Villarreal argues that the real harm arose from the trial court's submission of the lesser-included offense of aggravated assault causing serious bodily injury. As he asserts in his brief, "If the trial court had granted the instructed verdict, the prosecution of Appellant would have ended immediately and there would have been no lesser[-]included charge submitted to the jury." In his view, our rejecting his argument would mean that the State has unchecked power to overcharge defendants and then "completely turn[] the tables on [the defendant] at the last minute by seeking that lesser[-included offense] finding."

The problem with Villarreal's argument is that Texas statutory law and Court of Criminal Appeals precedent expressly allow the State to seek and obtain a lesser-included-offense conviction. *See* Tex. Code Crim. Proc. Ann. arts. 37.08–.09; *Grey v. State*, 298 S.W.3d 644, 650 (Tex. Crim. App. 2009). Recognizing this, Villarreal boldly asks us to "drastically modif[y]" the law regarding lesser-included offenses, particularly as it relates to notice requirements applicable to indictments. Essentially, he argues that the murder indictment gave him no notice of a possible aggravated-assault conviction, thereby denying him due process and a fundamentally fair trial, and ultimately rendering his counsel ineffective.

But as an intermediate appellate court, we are in no position to reject or alter the precedent of the Court of Criminal Appeals. *Wiley v. State*, 112 S.W.3d 173, 175 (Tex. App.—Fort Worth 2003, pet. ref'd). We are therefore bound by its holdings that "the State can abandon an element of the charged offense without prior notice

and proceed to prosecute a lesser-included offense," and that it may do so without showing that a rational jury could find the defendant guilty of only the lesser offense. *Grey*, 298 S.W.3d at 646, 650–51.

In this case, aggravated assault was a lesser-included offense of the charged murder because it (a) was established by proof of the same or less than all the facts required to establish the commission of the charged murder offense or (b) differed from the murder charge only in the respect that a less serious injury sufficed to establish its commission. *See* Tex. Code Crim. Proc. Ann. art 37.09; *Forest v. State*, 989 S.W.2d 365, 367–68 (Tex. Crim. App. 1999). The indictment in this case accused Villarreal of "commit[ting] an act clearly dangerous to human life that caused the death of . . . George, by striking Kenneth George with defendant's hand or a wooden rod or stick or by kicking or stomping Kenneth George with defendant's foot." To obtain a murder conviction, the State had to show that Villarreal caused George's murder; to obtain an aggravated-assault conviction, it had to show that Villarreal caused serious bodily injury to George. *See* Tex. Penal Code Ann. §§ 19.02(b)(2), 22.01, .02.

Uncontroverted video evidence shows that Villarreal struck George with the large wooden stick three times. The question for the jury was not whether Villarreal had struck George, but whether those strikes had caused George's death four days later or had caused only serious bodily injury. The jury was entitled to believe that

6

Villarreal's strikes had caused serious bodily injuries, likely those obvious ones to George's face, rather than the spleen laceration that resulted in his death.

We disagree with Villarreal's contention that the State should have been required to sink or swim on the murder charge alone, and we note Presiding Judge Keller's justification of allowing the State to request a lesser-included-offense charge:

> Allowing submission of lesser offenses when requested by the prosecutor would serve at least two important interests. First, society has an interest in convicting and punishing people who are guilty of crimes. When, in the prosecutor's judgment, submission of the lesser-included offense will enhance the prospects of securing an appropriate criminal conviction for a defendant who is in fact guilty, society's interests are best served by allowing the submission. Second, the prosecutor has the primary duty not to convict, but to see that justice is done. Even if the prosecutor believes in a given case that he will secure a conviction on the charged offense if the only alternative is acquittal, he might also believe that the jury should be given the option to decide whether a conviction on the lesser offense is more appropriate.

*Grey*, 298 S.W.3d at 651 (cleaned up). We therefore overrule his complaint that he was denied due process, due course of law, and a fair trial when the trial court denied his directed-verdict motion and allowed a lesser-included-offense charge.

To the extent Villarreal complains that his counsel was rendered ineffective by the trial court's rulings, he has not proved by a preponderance of the evidence that his counsel's representation was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Nava v. State*, 415 S.W.3d 289, 307 (Tex. Crim. App. 2013). The record must affirmatively

7

demonstrate that the claim has merit; here, it does not. *See Thompson v. State*, 9 S.W.3d

808, 813 (Tex. Crim. App. 1999). We therefore overrule any such argument.

## Conclusion

Having overruled Villarreal's arguments, we affirm the trial court's judgment.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: April 8, 2021