TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-11-00229-CR

NO. 03-11-00230-CR






Rhonnie Odell Simmons, Appellant


v.


The State of Texas, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT

NOS. D-1-DC-10-206239 & D-1-DC-10-206238

HONORABLE MICHAEL LYNCH, JUDGE PRESIDING




M E M O R A N D U M O P I N I O N


 

 A jury convicted Rhonnie Odell Simmons of the aggravated robbery of two men
in one incident, and the trial court assessed sentence of two concurrent 15-year terms in prison. On
appeal, Simmons raises three points of error: (1) the evidence was insufficient to prove that he used
the knife as a deadly weapon, (2) the evidence was insufficient to prove that he was trying to
appropriate property without the owner's consent, and (3) his trial attorney rendered ineffective
assistance of counsel by successfully objecting to a limiting instruction regarding the effect of his
prior convictions. We will affirm the judgments of conviction.


BACKGROUND


 This case arises from an encounter between Simmons and two men on a sidewalk
in Austin on a Sunday afternoon. The two men were housemates who walked to a convenience
store, made purchases, and were returning home when Simmons approached them and asked for
money. One of the victims described Simmons as woozy and jumpy. Simmons asked for money to
buy pizza and "weed" for him and his girlfriend. They offered to give him a dollar, but Simmons
said that was not enough. He offered the men his girlfriend for seven dollars, but they declined. 
When they tried to move on, Simmons stepped in their way. Eventually, Simmons pulled out a knife
with a blade at least three inches long. According to the victims, Simmons told an incoherent story,
swung the knife toward one of the men's throat, said "I could cut you here, I could cut you," and then
swung the knife about an inch from the man's torso and said "I could cut you here." The victim
testified that Simmons turned the knife toward the other man and said, "I could fucking kill you" to
both of them three or four times. The men testified that they were afraid Simmons was going to stab
them. The men told him they didn't have money with them and would have to go to an automated
teller machine. Simmons agreed that would be a good idea, so all three men went to the nearby
convenience store. Simmons put the knife away when entering.

 At the store, however, the men declined to give Simmons any money and tried to alert
the clerk to the danger. They again offered Simmons a dollar, which he again rejected. Simmons
began talking to other people in the store. He then told the men they were nice guys and that he
would let them go. Still fearing being stabbed the men stayed in the store. Another customer noticed
that Simmons stayed close to the men even when they tried to move away from him. The clerk told
Simmons to leave, which he did. After hearing the men's story, the customer called the police.

 When police arrested Simmons, they found a knife. Simmons also told the officers
a rambling story involving his girlfriend. He would interject that he told the robbery victims that
"if I wanted to rob you, I could." A police officer testified that Simmons's knife could be a deadly
weapon when used to make slashing motions toward someone.

 Simmons testified that he was high when he sought money. He testified that his
rambling story explained why he needed money. It involved a woman who was waiting for him at
a motel who had become angry with him and threatened him with a knife. Simmons testified that,
when he swung the knife at the men, he was merely re-enacting what the woman had said and done
to him, not threatening the men. They simply misunderstood him.

 The jury, however, convicted Simmons of aggravated robbery.


DISCUSSION


 Simmons raises three points of error: (1) the evidence was insufficient to prove that
the knife was a deadly weapon, (2) the evidence was insufficient to prove that he was trying to
appropriate property without the owner's consent, and (3) his trial attorney rendered ineffective
assistance by objecting to an instruction regarding the effect of prior convictions, which prevented
the jury from hearing a limiting instruction on the proper use of the convictions.


Deadly Weapon

 The jury found that Simmons committed the robbery using a deadly weapon. To
make a deadly weapon finding, the jury must find that the knife was a weapon that "in the manner
of its use or intended use was capable of causing death or serious bodily injury." Tex. Penal Code
Ann. § 1.07(a)(17) (West Supp. 2012). When an appellant challenges the sufficiency of the evidence
to sustain a criminal conviction, we must decide whether a rational trier of fact could have found the
essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 324
(1979); Clayton v. State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We review all the evidence
is in the light most favorable to the verdict and must assume that the trier of fact resolved conflicts
in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports
the verdict. Clayton, 235 S.W.3d at 778.

 We conclude that, although Simmons did not stab the victims, there was sufficient
evidence to support the jury's finding that the knife was a deadly weapon. The victims' agreement
that Simmons was telling a rambling story about his girlfriend when he made the slashing motions
with the knife did not foreclose the jury from finding that the knife was a deadly weapon. The jury
saw the knife and heard testimony that its blade was at least three inches long. The jury heard
testimony about Simmons's verbal threats and slashing motions with the knife at both victims, at
least once coming within an inch of one of the victims. One of the victims described these action
as "fake slashing," but said he called it "fake" because he was never actually cut. The other victim
explained as follows:


 I mean I felt like he was using the knife to demonstrate what he could do to my friend
by when he says I can cut you here, I could cut you here, and then turning to me and
saying with the knife to my chest I could fucking kill you. That doesn't seem like a
story you are telling when I am rejecting giving money.


A police officer testified that the knife, so used, could be a deadly weapon. The statute allows a
deadly-weapon finding to be based on the weapon's intended use. Although Simmons denied
intending the men harm and never directly said "Give me money or I will stab you with this knife,"
the jury could reasonably have found that Simmons was illustrating how he intended to slash the men
if they did not give him the money he desired. Simmons was also described as woozy and jumpy.
The jury could have concluded that the knife was capable of causing death or serious bodily injury
in the manner in which it was used or was intended to be used. Sufficient evidence supports the
deadly-weapon finding.


Effective consent

 Simmons argues that the evidence is insufficient to support the finding of the
element of robbery that he was trying to appropriate money without the owners' effective consent.
See Tex. Penal Code Ann. §§ 29.02 (West 2011) & 31.03(b)(1) (West Supp. 2012). Simmons
contends that he was a panhandler who sought only to get money through consent. However, even
if he did not demand money while gesturing with the knife, the sequence of events could imply a
connection between the request for money, the threats, and the slashing motions. The jury could
infer the necessary intent from his actions and the witnesses' perception of them. Viewed in the light
most favorable to the verdict, the evidence of the threats to cut and kill indicate an intent to override
the victims' lack of consent to give him money. (1)


Ineffective assistance of counsel 

 Simmons contends that his counsel was ineffective for objecting to the trial court's
attempt to instruct the jury to consider Simmons's criminal history for purposes of impeachment
only. The appellant must show that: (1) counsel's performance was deficient in that it fell below
an objective standard of reasonableness, and (2) counsel's deficient performance prejudiced
the defense, resulting in an unreliable or fundamentally unfair outcome of the proceeding. See
Strickland v. Washington, 466 U.S. 668, 687-88 (1984); Hernandez v. State, 726 S.W.2d 53, 56-57
(Tex. Crim. App. 1986). To establish deficient performance under the first prong, a defendant
must show that no reasonable trial strategy could justify counsel's conduct. See Strickland, 466 U.S.
at 689; Andrews v. State, 159 S.W.3d 98, 102 (Tex. Crim. App. 2005). In determining whether an
attorney's performance was deficient, we apply a strong presumption that the attorney's conduct
was within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 694-95. 
We review the effectiveness of counsel in light of the totality of the representation and the
circumstances of each case. See Thompson v. State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). 
A defendant establishes prejudice under the second prong of Strickland if he shows a reasonable
probability--a probability sufficient to undermine confidence in the trial's outcome--that, but
for counsel's unprofessional errors, the result of the proceeding would have been different. Id.
at 812. The appellant must prove ineffective assistance of counsel by a preponderance of the
evidence. Id. at 813.

 Simmons contends on appeal that his trial counsel was ineffective because he
refused to allow the trial court to instruct the jury to consider his criminal record only as it affected
his credibility. He admitted on cross examination to eight prior felonies for delivery of a controlled
substance, credit card abuse, possession of a controlled substance (four counts), and unauthorized
use of a motor vehicle (four counts). Trial counsel did not request a limiting instruction at the
time or when the jury charge was being prepared. See Tex. R. Evid. 105(a), 609. After closing
arguments, the trial court announced its intention to give a limiting instruction, but acceded
to Simmons's counsel's objection to the proposed additional instruction. On appeal, Simmons
contends that his trial counsel's actions were not part of a reasonable trial strategy, did not protect
his client's rights, and constituted deficient performance. Simmons contends that counsel's deficient
performance tilted the jury toward conviction in this case in which his intent was hotly contested and
credibility was key. He contends that, had the jury been limited to considering his criminal record
for purposes of impeachment, it probably would not have convicted him. Instead, he argues, that the
jury was free to convict him as a bad guy and did so.

 We conclude that Simmons has not carried his burden to show that trial counsel
provided ineffective assistance. There is no statement or testimony from trial counsel regarding
what strategy he intended to further by his objection. (2) The State posits that trial counsel might have
intended to allow the jury to consider that Simmons's felonious past was non-violent, and that
the armed robbery alleged was inconsistent with his character. That would be consistent with the
defense's attempt to show that Simmons did not intend to threaten the victims but was instead telling
a story incoherently because of intoxicants and--unfortunately for all concerned--using a real knife
as a prop. Had the trial court given the limiting instruction, it would have forbidden the jury from
considering the previous offenses for non-credibility issues. However, the lack of a statement from
trial counsel regarding trial strategy also dampens the effectiveness of the State's theory somewhat. 

 The critical weakness in Simmons's argument on appeal is its failure to consider the
totality of trial counsel's representation. While an error affecting a single aspect of a trial might
undermine the entire result, it is not clear that occurred here. The record shows that trial counsel
filed relevant motions--including one regarding the State's intention to introduce Simmons's
criminal history--and examined witnesses at trial, creating with the victims' testimony a framework
on which he could hang Simmons's explanation that the whole event was a misunderstanding.
Trial counsel gained a concession from one of the victims that it was "fair to say" that Simmons was
using the knife to illustrate his rambling story, which could support the misunderstanding theory.
Simmons has not demonstrated that his trial counsel's failure to obtain or permit a limiting
instruction rendered his entire representation ineffective.

 Even if he established the first prong of Strickland, Simmons has not shown that
the absence of a limiting instruction affected the outcome. Because Simmons and the victims told
versions of events that differed critically on whether Simmons threatened the men in order to obtain
money, the key to the trial was the credibility of the witnesses. Had the limiting instruction been
given, the jury still could have considered his eight prior offenses to impeach his credibility. The
absence of the limiting instruction allowed the jury to consider those offenses for any purpose, but
we do not see how that altered the outcome in a way harmful to Simmons. The prior offenses do not
show character conformity in this case because none of them involved Simmons pulling a knife on
victims. If anything, that contrast might tend to favor acquittal. Because the limiting instruction
would have permitted the jury to consider the offenses for the key issue of credibility--and no
additional factor the jury was allowed to consider is shown to have affected the outcome--we
conclude that the absence of the limiting instruction had no discernible effect on the outcome of the
trial. Simmons has not shown himself entitled to reversal of his convictions based on his counsel's
successful objection to the limiting instruction.

 The judgments of conviction are affirmed.


 

 Jeff Rose, Justice

Before Chief Justice Jones, Justices Henson and Rose

Affirmed

Filed: August 22, 2012

Do Not Publish
1. Robbery can occur even if no money changes hands because the statute includes threats
made in the course of an attempt to commit theft. Tex. Penal Code Ann. § 29.01(1) (West 2011);
see also id. §§ 29.02-.03.
2. We do not agree with Simmons's assertion that trial counsel admitted he was acting
deficiently in objecting to the limiting instruction. When the trial court asked if either side objected
to the proposed instruction, the following exchange occurred:


[DEF. COUNSEL:] I guess I will agree to it.


THE COURT: Yes or no?


[DEF. COUNSEL:] I mean I can be obstructionist and try to build in error. I guess I object to it.
I mean, you know, it is not doing my job.


THE COURT: Not doing your job to protect the rights? You don't want a request
specifically is your--


[DEF. COUNSEL:] Yes.


THE COURT: I want on the record that the defendant is objecting, consider this defendant's
record to be part of the strategy coming in and therefore I will honor the
defendant's request and not include the charge.


We read trial counsel's statement to be that he would not be doing his job if he allowed the
instruction to be read. His objection was an affirmative choice made in representing his client, not
an overt and admitted ploy to undermine his client.