

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-13-00818-CR

Mark Anthony **GARCIA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 437th Judicial District Court, Bexar County, Texas
Trial Court No. 2009CR2731A
Honorable Lori I. Valenzuela, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice

Sitting:    Rebeca C. Martinez, Justice
    Patricia O. Alvarez, Justice
    Luz Elena D. Chapa, Justice

Delivered and Filed:  May 6, 2015

AFFIRMED AS MODIFIED

Appellant Mark Anthony Garcia was charged by indictment with one count of murder.  The jury returned a guilty verdict and assessed punishment at twenty-years' confinement in the Institutional Division of the Texas Department of Criminal Justice.  On appeal, Garcia contends (1) he was denied effective assistance of counsel and (2) the trial court erred in assessing attorney's fees.  We modify the judgment to delete the assessment of attorney's fees and affirm the trial court's judgment as modified.

## FACTUAL AND PROCEDURAL BACKGROUND

Because Garcia does not challenge the sufficiency of the evidence, our recitation of the facts is limited to those facts associated with his appellate issues.

On December 13, 2008, several patrons at a local bar became engaged in a heated argument. The security guard removed the group of individuals from inside the premises and the confrontation ensued outside of the bar. Two of the men walked to a nearby silver vehicle; witnesses described both men as Hispanic—the first man wearing a black shirt and the second wearing a yellowish-colored shirt. Witnesses described the male with the yellowish-colored shirt reaching into the vehicle and grabbing a semi-automatic firearm. The vehicle was driven down the road and the man with the yellowish-colored shirt ran back to the bar and fired several shots at the victim, Michael Morales, who was standing outside the bar.

Officers quickly located a silver Cadillac with a Hispanic male wearing a yellowish-colored shirt. The individual was identified as Appellant Mark Anthony Garcia. Garcia's brother, Michael Garcia, and a Hispanic female, Priscilla Beltran, were also in the vehicle. Other officers located another Hispanic male, identified as Hector Lozano, wearing a black shirt and hiding in a dumpster nearby. A 9 mm firearm was found hidden in a parking lot in the same vicinity.

Garcia was detained and immediately told officers that his brother Michael was not involved in the incident. During the trial, several of the State's witnesses identified Garcia as the individual that returned to the bar and fired at Morales. Defense witnesses called into question whether Lozano or Garcia fired the weapon. As evidence of such, the witnesses pointed to the fact that Lozano, not Garcia, was the only individual with gunshot residue on his hands.

Garcia took the stand in his own defense. Garcia testified that he was actually running toward Lozano, who was holding the firearm, and trying to keep Lozano "from doing something stupid." At the close of Garcia's direct examination, defense counsel asked Garcia whether he had

done anything to justify his arrest on the night of the shooting. Garcia answered emphatically with "I had nothing to hide" and "I didn't do nothing." The State immediately argued trial counsel's question opened the door to otherwise inadmissible evidence—Garcia's possession of cocaine at the time of his arrest.

Garcia contends the jury's knowledge that he was in possession of cocaine prejudiced his credibility. Instead of attributing his behavior to too much alcohol, the jury viewed Garcia as "a drug-crazed, remorseless killer, instead of a good guy who was trying to stop a tragedy." The jury returned a verdict of guilty and assessed punishment at twenty-years' confinement in the Institutional Division of the Texas Department of Criminal Justice.

We turn first to Garcia's claim of ineffective assistance of counsel.

## INEFFECTIVE ASSISTANCE OF COUNSEL

### A. Standard of Review

In order to establish that trial counsel rendered ineffective assistance, Garcia must "establish two components by a preponderance of the evidence: deficient performance of trial counsel and harm resulting from that deficiency that is sufficient to undermine the confidence in the outcome of the trial." *Ex parte Moore*, 395 S.W.3d 152, 157 (Tex. Crim. App. 2013) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)); *accord Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012). To establish the first prong, deficient performance, Garcia must prove that his attorney's performance "'fell below an objective standard of reasonableness' under prevailing professional norms and according to the necessity of the case." *Ex parte Moore*, 395 S.W.3d at 157 (quoting *Strickland*, 466 U.S. at 687–88).

To establish harm, Garcia "must demonstrate that he was prejudiced by his attorney's performance or that 'there is a reasonable probability that, but for counsel's unprofessional errors,

the result of the proceeding would have been different.'" *Id.* at 158 (footnote omitted) (quoting *Strickland*, 466 U.S. at 694).

"An appellate court looks to the totality of the representation and the particular circumstances of each case in evaluating the effectiveness of counsel." *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). "There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Id.* (citing *Strickland*, 466 U.S. at 689). Therefore, Garcia "'must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" *Ex parte Moore*, 395 S.W.3d at 157 (quoting *Strickland*, 466 U.S. at 689).

**B.     Arguments of the Parties**

Garcia contends that by asking the question, trial counsel unintentionally opened the door to otherwise inadmissible extraneous offense evidence. Such testimony could only lead the jury to see Garcia as a "drug-crazed, remorseless killer, instead of a good guy who was just trying to stop a tragedy."

The State counters that a single, inarticulate question—asked during an otherwise vigorous representation and well above the objective professional standard of reasonableness—cannot amount to ineffective assistance of counsel.

**C.     Ineffective Assistance of Counsel**

"A substantial risk of failure accompanies an appellant's claim of ineffective assistance of counsel on direct appeal." *Thompson*, 9 S.W.3d at 813. "In the majority of instances, the record on direct appeal is simply undeveloped and cannot adequately reflect the failings of trial counsel." *Id.* at 813–14. "[T]rial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003); *accord Menefield*, 363 S.W.3d at 593. An "appellate court should not find deficient

performance unless the challenged conduct was 'so outrageous that no competent attorney would have engaged in it.'" *Menefield*, 363 S.W.3d at 593 (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)). Often on direct appeal, because the record is silent on counsel's reason, the defendant asks the appellate court to "speculate as to the reasons why trial counsel acted as he did," but the court is required to "presume that [counsel's] actions were taken as part of a strategic plan for representing the client." *Rodriguez v. State*, 336 S.W.3d 294, 302 (Tex. App.—San Antonio 2010, pet. ref'd). Here, however, the record specifically provides defense counsel's reasons for asking the question.

**D.    Analysis**

*1.    Testimony in Question*

On the tenth day of testimony, after the State rested its case in chief, Garcia took the witness stand. Garcia articulated his version of the events that evening. Garcia denied firing the weapon that killed Morales. He further explained that he was actually attempting to stop Lozano "from doing something stupid."

| | |
|---|---|
| Defense: | At the time that you were in the office talking with the detective, all right, did you believe that you'd some day end up on the stand being tried for murder? |
| State: | Objection, Your Honor, relevance. |
| Defense: | State of mind, Your Honor, at the time. Demeanor they placed him. |
| Trial Court: | Ask your question again. |
| Defense: | At the time that you were placed in custody in — with Detective Angell, all right, did you ever believe that you would be on trial for murder? |
| Trial Court: | It's sustained. |
| Defense: | Did you have anything to hide that night when you were talking to the detective? |

Garcia:        I had nothing to hide.

Defense:        Had you done anything?

Garcia:        I didn't do nothing.

*2.        Arguments Before the Trial Court*

After the defense rested, the State immediately asked to approach the bench. The State asserted that defense counsel "opened the door to his motion in limine" and the State was entitled to ask questions pertaining to the fact that Garcia "had drugs in his possession." The jury was excused and trial counsel explained,

> I don't believe that the motion in limine has been violated, Your Honor, on the record. I asked him if he ever thought he would be arrested for murder, that night, and did he have any reason. And that's what we're talking about murder. We're not talking about drugs. We're not talking about anything else.

The testimony was read back for the parties and the trial court. The trial court determined that, in light of the question asked, defense counsel "opened the door to any criminal act he may have committed that night that could have resulted in an arrest." Over defense counsel's ardent objection, the trial court ruled "that the door [was] opened. And [the State is] going to get to ask the questions."

*3.        Conclusion*

We are "especially hesitant to declare counsel ineffective based upon a single alleged miscalculation during what amounts to otherwise satisfactory representation, especially when the record provides no discernible explanation of the motivation behind counsel's actions—whether those actions were of strategic design or the result of negligent conduct." *Thompson*, 9 S.W.3d at 813; *see also Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011) ("While a single error will not typically result in a finding of ineffective assistance of counsel, an egregious error may satisfy the *Strickland* prongs on its own.").

Here, trial counsel clearly articulated that he did not anticipate or believe that his questions might open the door to the State's propounding questions pertaining to Garcia's possession of cocaine. *But see Garcia v. State*, 308 S.W.3d 62, 67–68 (Tex. App.—San Antonio 2009, no pet.) (concluding trial counsel's *multiple* blanket questions opened the door to extraneous bad acts and his *repeated failure* to object to admission of extraneous offenses deprived defendant of a fair trial). Even acknowledging that "a single egregious error of omission or commission" can constitute ineffective assistance, the allegations of ineffectiveness must be "firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson*, 9 S.W.3d at 813 (citing *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996)). We, therefore, look to trial counsel's representation throughout the trial.

Trial counsel conducted two days of pre-trial motions, two days of voir dire, fourteen days of testimony during the guilt/innocence portion of the trial, and two days of punishment testimony. During the guilt/innocence phase of the trial, trial counsel cross-examined twenty-two State's witnesses and presented ten defense witnesses. There were a plethora of objections lodged by defense counsel preventing damaging testimony from being heard by the jury. Additionally, sixty-one defense exhibits were admitted by the trial court. Defense counsel presented impassioned closing arguments in both the guilt/innocence and the punishment phases of the trial.

Garcia contends this trial turned on *his* credibility; yet, the record demonstrates *several* witnesses identified Garcia (the individual in the yellowish-colored shirt) as obtaining the weapon from the vehicle, placing the weapon in his waistband, and firing the weapon at Morales. Moreover, although Garcia's "jovial" disposition is mentioned during closing arguments, the State was comparing his appearance shortly after the shooting to his somber appearance in court. Neither party mentioned possession of cocaine or any other narcotics during closing arguments. Importantly, although the trial court ruled that defense counsel's question opened the door to

evidence of extraneous bad acts, there is no indication in the record defense counsel's actions were intentional; to the contrary, he clearly disagreed with the trial court's determination that the door was opened.

We remain mindful that simply showing other counsel's hindsight or a different trial strategy does not show ineffective assistance. *See Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). Upon a review of the entire record, we conclude Garcia failed to demonstrate *Strickland*'s first requirement—the deficient performance of trial counsel. *See Ex parte Moore*, 395 S.W.3d at 157 (quoting *Strickland*, 466 U.S. at 687–88). Because Garcia failed to show that trial counsel's performance was deficient, he failed to meet *Strickland*'s first prong so we need not address prejudice. *See Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001). We therefore overrule Garcia's first issue on appeal.

### ATTORNEY'S FEES

Garcia challenges the assessment of $3,110.00 in court costs plus an undetermined amount for attorney's fees imposed in the judgment. Garcia asserts the trial court twice found him indigent for purposes of trial—during the trial phase and again on appeal. He was, therefore, presumed to remain indigent, and there is no evidence to show he was able to pay the court-appointed trial attorney's fees.

### A.    Argument of the Parties

Garcia contends there is no evidence of a material change in his financial circumstances after the trial court determined his indigency. Because there is no such evidence, the record is insufficient to support the assessment of attorney's fees as costs against Garcia.

The State counters that Garcia was able to post a $200,000.00 bond and gained employment while on bond awaiting trial. Such evidence, the State argues, is some evidence that Garcia had the financial resources to cover at least a portion of his legal expenses.

**B.      Court Costs Assessed Against Indigent Defendants**

"'A defendant who is determined by the court to be indigent is presumed to remain indigent for the remainder of the proceedings in the case unless a material change in the defendant's financial circumstances occurs.'"  *Dieken v. State*, 432 S.W.3d 444, 446–47 (Tex. App.—San Antonio 2014, no pet.) (quoting TEX. CODE CRIM. PROC. ANN. art. 26.04(p) (West Supp. 2014)); *accord Wiley v. State*, 410 S.W.3d 313, 317 (Tex. Crim. App. 2013); *Mayer v. State*, 309 S.W.3d 552, 557 (Tex. Crim. App. 2010).  On the other hand,

> "[i]f the court determines that a defendant has financial resources that enable him to offset in part or in whole the costs of the legal services provided, . . . the court shall order the defendant to pay . . . as court costs the amount that it finds the defendant is able to pay."

*Dieken*, 432 S.W.3d at 446–47 (alterations in original) (quoting TEX. CODE CRIM. PROC. ANN. art. 26.05(g)); *accord Mayer*, 309 S.W.3d at 556.

"'[T]he defendant's financial resources and ability to pay are explicit critical elements in the trial court's determination of the propriety of ordering reimbursement of costs and fees.'" *Dieken*, 432 S.W.3d at 447 (quoting *Mayer*, 309 S.W.3d at 556).  Our review determines whether the record supports a finding that Garcia's "financial circumstances experienced a material change" and that he "was able to pay the court-appointed attorney's fees." *Id.* (citing TEX. CODE CRIM. PROC. ANN. art. 26.04(p)); *accord McFatridge v. State*, 309 S.W.3d 1, 6 (Tex. Crim. App. 2010).  In doing so, "we view the evidence in the light most favorable to the judgment." *Dieken*, 432 S.W.3d at 447 (citing *Mayer*, 309 S.W.3d at 557).

**D.      Analysis**

We first turn to the trial court's determination that Garcia was indigent.

### 1.    Trial Court's Finding of Indigence

The Texas Code of Criminal Procedure provides that a criminal defendant "without means to employ counsel of my own choosing," may petition the court to appoint counsel to represent him at the county's expense. TEX. CODE CRIM. PROC. ANN. art. 26.04(o) (providing oath of indigence language); *id.* art. 26.05(f) (requiring counties to pay indigents' costs and attorney's fees).

In *Dieken*, 432 S.W.3d at 447, this court analyzed the inherent conflict in article 26.04's mandate with that of article 26.05(g). We concluded that "[a]rticle 26.05(g) authorizes a court to determine that a defendant is able to pay a portion of the costs of his legal services but is unable to pay the balance." *Id.* (citing TEX. CODE CRIM. PROC. ANN. art. 26.05(g) ("If the court determines that a defendant has financial resources that enable him to *offset in part* or in whole *the costs of the legal services provided,* including any expenses and costs, *the court shall order the defendant to pay* during the pendency of the charges or, if convicted, as court costs *the amount that it finds the defendant is able to pay.*")). We must, therefore, determine whether the trial court's conclusion that Garcia was able to pay for part, but not all, of the legal services he received was reasonable.

### 2.    Relevant Evidence

Although the record does not contain any documents determining Garcia's indigency, Garcia was clearly represented by appointed counsel during his trial. The trial court further approved payment of an investigator for the defense. From these documents, we presume Garcia "'remain[ed] indigent . . . unless a material change in [Garcia's] financial circumstances occur[red].'" *Id.* at 448 (second, fourth alterations in original) (quoting TEX. CODE CRIM. PROC. ANN. art. 26.04(p)); *see also Wiley*, 410 S.W.3d at 317; *Mayer*, 309 S.W.3d at 557.

As the State points out, on January 13, 2009, the trial court signed a Special Condition of Release on Bond, setting Garcia's bond at $100,000.00 and ordering full-house arrest and

electronic-monitoring as conditions of bond. On October 28, 2011, the bond was apparently increased to $200,000.00. Although it appears Garcia was able to post bond, the clerk's record does not contain any actual documentation of Garcia's bond.

On May 31, 2012, defense counsel filed a Motion to Modify Conditions of Bond requesting Garcia's electronic monitoring be modified to accommodate his work schedule at a local restaurant. On November 20, 2013, defense counsel's motion to withdraw indicating that Garcia "remains indigent and cannot afford to hire an attorney to represent him [on] appeal" was granted and, the trial court appointed an assistant public defender to represent Garcia on appeal.

*3.    Sufficient Evidence*

To impose the attorney's fees on Garcia, the trial court had to find, either expressly or implicitly, that a material change occurred and Garcia had the ability to pay $3,110.00 in court costs and attorney's fees. *See* TEX. CODE CRIM. PROC. ANN. art. 26.05(g); *Wiley*, 410 S.W.3d at 317; *Mayer*, 309 S.W.3d at 556. The record does not contain either an express written or oral finding supporting the same. Additionally, the record does not contain a bill of costs outlining a portion for which the trial court reasonably determined Garcia could pay.

Because the record shows Garcia had court-appointed counsel at trial and on appeal, and does not include either an express or implicit finding of a material change in Garcia's ability to pay the attorney's fees, we modify the judgment to delete the assessment of attorney's fees. *See Wiley*, 410 S.W.3d at 317; *Mayer*, 309 S.W.3d at 556.

## CONCLUSION

Having overruled Garcia's ineffective assistance claim, we affirm the trial court's judgment as modified.

Patricia O. Alvarez, Justice

DO NOT PUBLISH

- 11 -