# 654·15

COURT OF CRIMINAL APPEALS
AUSTIN TEXAS

ORIGINAL

MARK ANTHONY GARCIA PRO SE
APPELLANT

CASE NO:04-13-00818-CR

MOTION OF APPEAL FOR
DISCRETIONARY REVIEW
PETITION TO CRIMINAL
COURT OF APPEALS. PURSUANT
TO RULE OF APPELLATE
PROCEDURE 66.3

V.

RECEIVED IN
COURT OF CRIMINAL APPEALS

STATE OF TEXAS
APPELLEE

JUL 15 2015

Abel Acosta, Clerk

FILED IN
COURT OF CRIMINAL APPEALS

JUL 15 2015

Abel Acosta, Clerk

COURT OF CRIMINAL APPEALS
COURT OF CRIMINAL APPEALS OF TEXAS
P.O. BOX 12308,AUSTIN TEXAS 78711

## LITIGATION PRO SE INDIGENT MOTION IN FORMA PAUPERIS
## PURSUANT TO 28 U.S.C.1914(a)

Comes now pro se litigant Mark Anthony Garcia and request that this Honrable Court of Appeals recognize appellants indigent request that he has no money to pay for filing or copying of his present litigation and brief material in his present case. So prays petitioner.(See attached copy of present account).

Respectfully

_Mark Anthony Garcia_ 1891224

## CERTIFICATE OF SERVICE

On this day of _June 29_ 2015 I sent a copy of this motion and indigent request to the Court of Appeals clerk of the court.

Respectfully

_Mark Anthony Garcia_ 1891224

# AFFIDAVIT IN SUPPORT
## OF MOTION
### TITLE 28 INSIDE THE UNITED STATES
### CODE SECTION
### 1746


This affidavit by _Mark Anthony Green_ 149124 pro se petitioner in the present case being first duly sworn and deposed say and declare under penalty of perjury that the facts herein are true and correct to the best of my knowledge and belief. I understand that making false statements may lead to my being prosecuted for perjury and affirm that all of the statements contained herein are true and correct to the best of my knowledge and belief are as follows.


STATEMENT OF FACTS

MARK ANTHONY GARCIA PRO SE

APPELLANT

V.

STATE OF TEXAS

APELLEE

CASE NO:04-13-00818-CR

APEALLANTS PRO SE MOTION
MOTION TO RECALL THE
MANDATE
ON APPEAL FROM THE 437th
JUDICAL DISTRICT COURT,
BEXTAR COUNTY,TEXAS,TRIAL
COURT NO:2009CR2731A

## MOTION

Comes now pro se petitioner Mark Anthony Garcia and request that this court hold this pro se brief to a less stringent standard than one prepared and filed by a seasoned lawyer;See Thomas v. Edy,481 F.3d 434 440(6th Cir.2006);Haines v.Kerner,404 U.S.19,501-21(1972). In support of petitioners motion he asserts the following grounds for relief. Appellant acting pro se moves this court to review and entertain all of his present claims for relief and allegations at law in the interest of justice to prevent further miscarriage of justice to appellant. Appellant also moves this Honorable Court to recall the mandate in a timely fashion to allow"Petition for Panel Rehearing"to be considered by the Court.

## I.BACKGROUND

Apellant was found guilty of one count of murder and was sentenced to twenty years imprisonment in the Institutional Division of Texas Department of Criminal Justice. On Appeal Garcia contends that he was denied effective assistance of counsel at trial and that the trial court erred in assessing attorney fees to an indigent defendant.

1 of 7

Appellant is recalling the mandate and envoking any and all rules of procedure to be reviewed by this court of appeals.Moreover that both his trial and appellate counsel were ineffective..Appellants trial counsel for exposing him to cruel and unusual punishment and an 8th amendment violation. By and through trial counsels cross examination of appellant that lead the jury to believe he was a drug crazed remorseless killer .Because appellant is raising these ineffective assistance of appellate counsel issues at this time he is requesting that this court of appeals toll the time in accordance with the rule of criminal procedure that the record be fully developed to adequately reflect appellants claims, Thompson v. State,9 S.W.3d 808,813(Tex.Crim. App.1999); Strickland 466 U.S.at 688,690.

Furthermore in the interest of justice appellant request that this court review these prejudical circumstances of extraordinary exception.

## ARGUMENT.I

Appellant has been severly prejudiced by counsels performance that clearly represents an conflict of interest by and through their non professional actions at trial and during his present appeal. See Evitts v. Lucey,469 U.S.387(1985);The Sixth Amendment right to counsel "attaches" with filing of formal criminal charges,and extends to all"critical stages"of the proceedings.Moran v. Burbine,475 U.S.412(1986:Michigan v. Jackson,475 U.S.525,629 n.3(1986);Scott v. Illinois,440 U.S.367(1979);Coleman v. Alabama,399 U.S.1(1970) Dew v. United States,558 A.2d1112,1113-18(D.C.1989)"[T]he right to counsel is right to effective assistance of counsel."Strickland v. Washington,466 U.S.668,686(1984)(quoting McMann v. Richardson,397 U.S.759,771 n.14(1970).

When a jurisdiction provides an appeal of right,due process also gu-

arantees the assistance of counsels on appeal. Evitts v. Lucey,469 U.S.387 (1985).Moreover it is the Courts obligation to ensure that defendants rights are protected (1)that defendant understands the charges (2)assist attorney in making defense Dusky v. U.S.,362 U.S.402 (1960).Counsels cumulative errors throughout his trial proceedings perjudiced defendants opportunity at a fair result at trial and during his court proceedings. See Taylor v. Kentucky436, U.S.478,n.15,98 S Ct.1930,L.Ed.2d 468(1978);Strickland ,466 U.S.at 688.

Counsel is expected to have not only the formal training and is responsible by and through membership in the bar but also enough additional knowledge,as well as experience,to permit the exercise [of]that degree of reasonable care and skill expected of lawyers acting under similar circumstnces").Thus for defendants counsel at rial to expose him to such a total disregard by not protecting his client from such exposure with his own defense strategey,prejudiced the defendant and exposed him to an 8th Amendment violation of cruel and unusual punishment by portrayingdefendant as a crazed drug murderer.

Judicial scrutiny of counsels performance must be highly deferential [A]Court must indulge a strong presumption that counsels conduct falls within the wide range of reasonable professional assistance "the proper standard for attorney performance is that of reasonable effective assistance"defined as reasonableness under prevailng professional norms." In appellants case counsel so undermined the adversarial process that the trial cannot be relied upon as having produced a just result. Strickland,466 U.S.at 686.Moreover appellate counsel refused to implicate or recognize the ineffective consequences that were evidenced by trial counsels deficient performance that prejudiced appellant at trial.                          3 of7

Appellant need not show that counsels deficient performance more likely than not altered the outcome of the case,"id.at 693,but rather must show that there is a reasonable probabiltiy that,but for counsels unprofessional errors,the result in the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.As in appellants case the numerous cumulative errors that counsel should have exposed and revealed.(1) **father of** co-defendant prosecuting D.A. and assistant Prosecuting the case forced to resign for tampering with evidence and illicit tactics in court proceedings these and other undermining evidence should have been utilized by defense counsel and appellate co-ounsel that could have undermined the confidence in the outcome of the prosecutions case and changed the entire evidentiary picture in appellants case and trial.Brady v. Maryland,373 U.S.83(1963)this is exculpatory information and should have been utilized by defense attor- to mitigate appellants sentence and guilt.

These prejudicial errors should have been brought before the appeals court that are part of the record and exhibits by prosecution and defense needed to know or should have known through due diligence the extent of this exculpatory information. (See attached Pg of argument)

## QUESTIONS FOR THE COURT

1. Whether counsel was ineffective for failing to make Brady type objections at Appellants Sentencing and bringing to the courts attention that there should be a mistrial for the participation of a prosecutors assistant that was presently under investigation for tampering with evidence in other cases and possibly appellants case.Thus contrary to the Judicial Court Appellants sentence was determined in violation of the constituional principles enunciated in Strickland and

and Brady specifically that had the jury been made aware of the D.A. and his assistant being under investigation for illicit acts in the performance of their jobs by and through prosecution of appellant and others.

2. Whether appellantCounsel represented an active conflict of interest by not assisting appellant in filing his requested ineffective assistance of counsel claims to the Court of Appeals. See Strickland ,466 U.S.at 688; Evitts v. Lucey 469 U.S.387,396-99(1985);Hollines v.Estelle,569 F.Supp.,146(W.D.Tex.1983);U.S. v. Johnson,995 F.Supp.1259(D Kan.1998);Demarest v. Price,905 F.Supp.1432(D.Col.1995);Berryman v. Morton,100 F.3d 1089(3rd.Cir.1996).

3.Whether the Court should recognize the conflict of interest claim which constituted "cause " for procedural default Bliss v. Lockhart 980 F.2d 470(8th Cir.1992)See also Murray v. Carrier,477 U.S.478,496 106 S.Ct.2639,2649-50,91 L.Ed.2d 397(1985);The Supreme Court although cautioning that it would not always be true,instructed that "where a constitutional violation has probably resulted in the conviction of one who is actually innocent,a federal habeas corpus may grant the writ even in the absence of a showing of cause for pocedural default"

The Supreme Court in Smith v. Murray,477 U.S.527,537,106 S.Ct.2661,2667-68,91 L.Ed.2d 434(1986 did imply that actual innocence exception may apply to non capital sentencing cases;We reject the suggestion that the principles  of Wainwright v Sykes,[cause and prejudice requirements in cases of procedural default]apply differently depending on the nature of the penalty a State imposes for the violation of its criminal laws.We similarly reject the suggestion that the there is anything "fundamentally unfair "about enforcing procedural default rules in cases devoid of any substantial claim that the alleged error undermined the accuracy of guilt or sentencing determination.(Emphasis add-

ed).

Whether the court erred in not considering appellants actual and factual innocence by and through his numerous realistic claims for relief.Schlup v. Delo,513U.S.298,130 L.Ed.2d.808,115 S.Ct.851(1995) A credible claim of actual innocence involves the petitioner supporting his constitutional claim with "new reliable evidence whether it be exculpatory, scientific evidence,trustworthy,eyewitness accounts or critical physical evidence that was not presented at trial."Id. The Court "is not bound by the rules of admissibility that would govern at trial". And should "consider the probative force of relevant evidence that was either excluded or unavailable at trial."Id.[A] petitioner does not meet the threshold requirement unless he persuades the court that,in light of the new evidence, no jurror ,acting reasonably,would have voted to find him guilty beyond a reasonable doubt."Id. Also see McCoy v. Norris,958 F.Supp.420(E.D.Ark.1996) See also Bouseley v. United States,523 U.S.614,140 L.Ed.2d 828,118 S. Ct. 1604(1998);

Petitioner in the present case moves this court to issue a writ to reopen the cases or all writs necessary or appropriate in aid of its jurisdictions and agreeable to the usages and principles of law to reopen the criminal case and to grant relief from the execution of the judgement. Because of the matters arising subsequent to the rendition of the judgement based upon legal defenses arising after the judgement showing that constitutional violations resulted in conviction of one who is actually innocent of comitting any crime.

:Or that the conduct that he was accused of no longer be deemed a crime The 11th Circuit found that a"colorable showing of factual innocence" is the test,or the test is whether the alleged error precluded the developement of true facts or resulted in the admission of false ones on a material question of justice will demand consideration of the merits of a claim,where there is a colorable showing of factual innocence. This appellant present set of extra ordinary circumstances that he prays this court will review and in the interest of justice relieve him from judgement. So Prays Petitioner.

Respectfully

Mark Anthony Garcia 189122Y

## CERTIFICATE OF SERVICE

On this day of June 29 2015 I sent a copy of this motion to the the clerk of the court.

Respectfully

Mark Anthony Garcia 189122Y

(Attached pg of Argument)

I) By not bringing up all the facts for my appeal. I the defendant never had any G.S.R. on me, when arrested. Now in fact that Co-defendet Hector Lozano did on both hands. However, I the defendant was in fact arrested within 2 to 5 mins. and tested for G.S.R. shortly after the shooting and came out negative. Therefor, Co-defendant Hector Lozano was arrested within 10-15 mins after the shooting and tested for G.S.R. about 2to3 hours in Police Head quaters, and was found with G.S.R. on both hands. Now if this had been committed into stating grounds for my appeal by the Appelant Attorney and in anknowledgement of the results were kept out of the courts as grounds For my appeal. I believe into submitting these results to the 4th courts of Appeals. Had Counsel Focus on why I did not have G.S.R. on me and Co-defendant Hector lozano did after it was alleged I was a Prime murder suspect. I Feel the out come would of been different. Therefor, had Counsel tried to prove my innocents by establishing the Fact, how could Someone be tried for murder if I had no G.S.R. on me From the murder weapon. and Co-defendant Hector Lozano did and was never tried For murder. Now a Forensic scientist named Crystina Vachon testified that gunshot residue in Fact may or may not be Present on someones hands after discharging a gun and that G.S.R. is no definitive Proof that a Person Just "said" weapon or not. The Fact is that (G.S.R.) and evidence depends on the gun fired and not the Person. IF a "Particular gun" leaves G.S.R. on a person after discharging it, that

Same gun (characteries) can have the results. The gun in question would have left G.S.R. on both Hector Lozanos hands as well as the defendants hand, in which, the G.S.R. was found on only Hector lozanos hands. not the defendant. By not excuting these Procedures, establishing the fact on how Could someone committ a crime of murder if there were no Proof of G.S.R. on me. How could I have committed an alleged murder.

II) Now after leaving the park-in-lot where the cars were parked being Co-defendant and girlfriend were in a gray Caddillac, Hetor being the driver, I the defendant and my brother were in the white monte carlo, I the defendant being the driver. I notice Hector lozano had parked on the bus lane of commerce, and getting out the car and his girlfried got out as well, she was trying to hold him back but he pushed her away and that is when I Parked right behind them which video shows me hesitate. that is when Hectors girlfriend runs to the car because Hector lozano ran back towards the bar, and she tell me mark go stp him he has his gun. So that is when I get out the car and run after him which video shows Hector lozano running first and 12 seconds later you see me running after him but by the time I reached up to Hector He had pulled out his gun and shot the victim and run, I stood there in panic till I ran back to the white monte carlo and stayed till police approached me, However I Feel due to the fact that I was calm and

cooraperstive not once did I try and flee or hid from the scene after the shooting because I did not kill anybody Therefor, Hector Lozano after the shooting ran and was found hiding inside a dumpster in fact was trying to hid from something he had just done wrong.

III) However a Professor of Psychology and aero science at Baylor University testified that eyewitness evidence is not reliable as physical evidence namly (G.S.R.) as physical evidence, Also states that witness memory of tramatic events tends to be less reliable. Due to the fact that this happened at a bar, many people were drinking and were not in there right state of mind as they would be sober, There for, it brings their credilability very low as eyewitness evidence. Now by these witness hearing gun shots, a personces get frantic and will hid till no shots are being fired. Then they will look around to see what had just happened. Therefor, by witness saying they seen I the defendant being the shooter well they were in fact wrong and mistaken, However when the shooting took place Hector Lozano was wearing a black shirt and I was wearing an orange shirt. Now Hector Lozano acted to quickly and after he shot the victim he ran, and that is when these witnesses headed for cover, so after they heard the gun shot stop, well they look up to see me the defendant the only one standing and running back to the white monte carlo, so therefor it will believe them to believe that I was the shooter and that I

was the prime murder suspect because not once did they see the guy in the black shirt Hector lozano shot and kill the victim due to the fact he acted to quickly.

III  Relevant evidence was also left out by Appeal Attorney while filing Appeal motion. Court Records also show that one of the Juries was Infact my Co-defendant "Hector lozano" Cousin. It is in fact my belief that the thought of view of the Juries was tainted by his cousin for a week long before she acknowledge she and Hector lozano were related. As you can see I was greatly Injusticed and the odds were never in my favor. How could this be a Jury of my Peee. Hector lozano Cousin was allowed a week worth of Jury duty and had strongly influential opinions over other Juries to down play me as the shooter. Therefor, it is my Conclusion that I did not have a Jury of my Peee.



# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-13-00818-CR

Mark Anthony **GARCIA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 437th Judicial District Court, Bexar County, Texas
Trial Court No. 2009CR2731A
Honorable Lori I. Valenzuela, Judge Presiding

Opinion by: Patricia O. Alvarez, Justice

Sitting: Rebeca C. Martinez, Justice
Patricia O. Alvarez, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed: May 6, 2015

AFFIRMED AS MODIFIED

Appellant Mark Anthony Garcia was charged by indictment with one count of murder. The jury returned a guilty verdict and assessed punishment at twenty-years' confinement in the Institutional Division of the Texas Department of Criminal Justice. On appeal, Garcia contends (1) he was denied effective assistance of counsel and (2) the trial court erred in assessing attorney's fees. We modify the judgment to delete the assessment of attorney's fees and affirm the trial court's judgment as modified.

FACTUAL AND PROCEDURAL BACKGROUND

Because Garcia does not challenge the sufficiency of the evidence, our recitation of the facts is limited to those facts associated with his appellate issues.

On December 13, 2008, several patrons at a local bar became engaged in a heated argument. The security guard removed the group of individuals from inside the premises and the confrontation ensued outside of the bar. Two of the men walked to a nearby silver vehicle; witnesses described both men as Hispanic—the first man wearing a black shirt and the second wearing a yellowish-colored shirt. Witnesses described the male with the yellowish-colored shirt reaching into the vehicle and grabbing a semi-automatic firearm. The vehicle was driven down the road and the man with the yellowish-colored shirt ran back to the bar and fired several shots at the victim, Michael Morales, who was standing outside the bar.

Officers quickly located a silver Cadillac with a Hispanic male wearing a yellowish-colored shirt. The individual was identified as Appellant Mark Anthony Garcia. Garcia's brother, Michael Garcia, and a Hispanic female, Priscilla Beltran, were also in the vehicle. Other officers located another Hispanic male, identified as Hector Lozano, wearing a black shirt and hiding in a dumpster nearby. A 9 mm firearm was found hidden in a parking lot in the same vicinity.

Garcia was detained and immediately told officers that his brother Michael was not involved in the incident. During the trial, several of the State's witnesses identified Garcia as the individual that returned to the bar and fired at Morales. Defense witnesses called into question whether Lozano or Garcia fired the weapon. As evidence of such, the witnesses pointed to the fact that Lozano, not Garcia, was the only individual with gunshot residue on his hands.

Garcia took the stand in his own defense. Garcia testified that he was actually running toward Lozano, who was holding the firearm, and trying to keep Lozano "from doing something stupid." At the close of Garcia's direct examination, defense counsel asked Garcia whether he had

- 2 -

done anything to justify his arrest on the night of the shooting. Garcia answered emphatically with "I had nothing to hide" and "I didn't do nothing." The State immediately argued trial counsel's question opened the door to otherwise inadmissible evidence—Garcia's possession of cocaine at the time of his arrest.

Garcia contends the jury's knowledge that he was in possession of cocaine prejudiced his credibility. Instead of attributing his behavior to too much alcohol, the jury viewed Garcia as "a drug-crazed, remorseless killer, instead of a good guy who was trying to stop a tragedy." The jury returned a verdict of guilty and assessed punishment at twenty-years' confinement in the Institutional Division of the Texas Department of Criminal Justice.

We turn first to Garcia's claim of ineffective assistance of counsel.

## INEFFECTIVE ASSISTANCE OF COUNSEL

### A. Standard of Review

In order to establish that trial counsel rendered ineffective assistance, Garcia must "establish two components by a preponderance of the evidence: deficient performance of trial counsel and harm resulting from that deficiency that is sufficient to undermine the confidence in the outcome of the trial." *Ex parte Moore*, 395 S.W.3d 152, 157 (Tex. Crim. App. 2013) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)); *accord Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012). To establish the first prong, deficient performance, Garcia must prove that his attorney's performance "'fell below an objective standard of reasonableness' under prevailing professional norms and according to the necessity of the case." *Ex parte Moore*, 395 S.W.3d at 157 (quoting *Strickland*, 466 U.S. at 687–88).

To establish harm, Garcia "must demonstrate that he was prejudiced by his attorney's performance or that 'there is a reasonable probability that, but for counsel's unprofessional errors,

- 3 -

the result of the proceeding would have been different.'" *Id.* at 158 (footnote omitted) (quoting *Strickland*, 466 U.S. at 694).

"An appellate court looks to the totality of the representation and the particular circumstances of each case in evaluating the effectiveness of counsel." *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). "There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Id.* (citing *Strickland*, 466 U.S. at 689). Therefore, Garcia "'must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" *Ex parte Moore*, 395 S.W.3d at 157 (quoting *Strickland*, 466 U.S. at 689).

## B.     Arguments of the Parties

Garcia contends that by asking the question, trial counsel unintentionally opened the door to otherwise inadmissible extraneous offense evidence. Such testimony could only lead the jury to see Garcia as a "drug-crazed, remorseless killer, instead of a good guy who was just trying to stop a tragedy."

The State counters that a single, inarticulate question—asked during an otherwise vigorous representation and well above the objective professional standard of reasonableness—cannot amount to ineffective assistance of counsel.

## C.     Ineffective Assistance of Counsel

"A substantial risk of failure accompanies an appellant's claim of ineffective assistance of counsel on direct appeal." *Thompson*, 9 S.W.3d at 813. "In the majority of instances, the record on direct appeal is simply undeveloped and cannot adequately reflect the failings of trial counsel." *Id.* at 813–14. "[T]rial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003); *accord Menefield*, 363 S.W.3d at 593. An "appellate court should not find deficient

- 4 -

performance unless the challenged conduct was 'so outrageous that no competent attorney would have engaged in it.'" *Menefield*, 363 S.W.3d at 593 (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)). Often on direct appeal, because the record is silent on counsel's reason, the defendant asks the appellate court to "speculate as to the reasons why trial counsel acted as he did," but the court is required to "presume that [counsel's] actions were taken as part of a strategic plan for representing the client." *Rodriguez v. State*, 336 S.W.3d 294, 302 (Tex. App.—San Antonio 2010, pet. ref'd). Here, however, the record specifically provides defense counsel's reasons for asking the question.

## D. Analysis

### 1. Testimony in Question

On the tenth day of testimony, after the State rested its case in chief, Garcia took the witness stand. Garcia articulated his version of the events that evening. Garcia denied firing the weapon that killed Morales. He further explained that he was actually attempting to stop Lozano "from doing something stupid."

| | |
|---|---|
| Defense: | At the time that you were in the office talking with the detective, all right, did you believe that you'd some day end up on the stand being tried for murder? |
| State: | Objection, Your Honor, relevance. |
| Defense: | State of mind, Your Honor, at the time. Demeanor they placed him. |
| Trial Court: | Ask your question again. |
| Defense: | At the time that you were placed in custody in — with Detective Angell, all right, did you ever believe that you would be on trial for murder? |
| Trial Court: | It's sustained. |
| Defense: | Did you have anything to hide that night when you were talking to the detective? |

Garcia:      I had nothing to hide.

Defense:    Had you done anything?

Garcia:      I didn't do nothing.

2.     *Arguments Before the Trial Court*

After the defense rested, the State immediately asked to approach the bench. The State asserted that defense counsel "opened the door to his motion in limine" and the State was entitled to ask questions pertaining to the fact that Garcia "had drugs in his possession." The jury was excused and trial counsel explained,

> I don't believe that the motion in limine has been violated, Your Honor, on the record. I asked him if he ever thought he would be arrested for murder, that night, and did he have any reason. And that's what we're talking about murder. We're not talking about drugs. We're not talking about anything else.

The testimony was read back for the parties and the trial court. The trial court determined that, in light of the question asked, defense counsel "opened the door to any criminal act he may have committed that night that could have resulted in an arrest." Over defense counsel's ardent objection, the trial court ruled "that the door [was] opened. And [the State is] going to get to ask the questions."

3.     *Conclusion*

We are "especially hesitant to declare counsel ineffective based upon a single alleged miscalculation during what amounts to otherwise satisfactory representation, especially when the record provides no discernible explanation of the motivation behind counsel's actions—whether those actions were of strategic design or the result of negligent conduct." *Thompson*, 9 S.W.3d at 813; *see also Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011) ("While a single error will not typically result in a finding of ineffective assistance of counsel, an egregious error may satisfy the *Strickland* prongs on its own.").

Here, trial counsel clearly articulated that he did not anticipate or believe that his questions might open the door to the State's propounding questions pertaining to Garcia's possession of cocaine. *But see Garcia v. State*, 308 S.W.3d 62, 67–68 (Tex. App.—San Antonio 2009, no pet.) (concluding trial counsel's *multiple* blanket questions opened the door to extraneous bad acts and his *repeated failure* to object to admission of extraneous offenses deprived defendant of a fair trial). Even acknowledging that "a single egregious error of omission or commission" can constitute ineffective assistance, the allegations of ineffectiveness must be "firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson*, 9 S.W.3d at 813 (citing *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996)). We, therefore, look to trial counsel's representation throughout the trial.

Trial counsel conducted two days of pre-trial motions, two days of voir dire, fourteen days of testimony during the guilt/innocence portion of the trial, and two days of punishment testimony. During the guilt/innocence phase of the trial, trial counsel cross-examined twenty-two State's witnesses and presented ten defense witnesses. There were a plethora of objections lodged by defense counsel preventing damaging testimony from being heard by the jury. Additionally, sixty-one defense exhibits were admitted by the trial court. Defense counsel presented impassioned closing arguments in both the guilt/innocence and the punishment phases of the trial.

Garcia contends this trial turned on *his* credibility; yet, the record demonstrates *several* witnesses identified Garcia (the individual in the yellowish-colored shirt) as obtaining the weapon from the vehicle, placing the weapon in his waistband, and firing the weapon at Morales. Moreover, although Garcia's "jovial" disposition is mentioned during closing arguments, the State was comparing his appearance shortly after the shooting to his somber appearance in court. Neither party mentioned possession of cocaine or any other narcotics during closing arguments. Importantly, although the trial court ruled that defense counsel's question opened the door to

evidence of extraneous bad acts, there is no indication in the record defense counsel's actions were intentional; to the contrary, he clearly disagreed with the trial court's determination that the door was opened.

We remain mindful that simply showing other counsel's hindsight or a different trial strategy does not show ineffective assistance. *See Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). Upon a review of the entire record, we conclude Garcia failed to demonstrate *Strickland*'s first requirement—the deficient performance of trial counsel. *See Ex parte Moore*, 395 S.W.3d at 157 (quoting *Strickland*, 466 U.S. at 687–88). Because Garcia failed to show that trial counsel's performance was deficient, he failed to meet *Strickland*'s first prong so we need not address prejudice. *See Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001). We therefore overrule Garcia's first issue on appeal.

## ATTORNEY'S FEES

Garcia challenges the assessment of $3,110.00 in court costs plus an undetermined amount for attorney's fees imposed in the judgment. Garcia asserts the trial court twice found him indigent for purposes of trial—during the trial phase and again on appeal. He was, therefore, presumed to remain indigent, and there is no evidence to show he was able to pay the court-appointed trial attorney's fees.

### A. Argument of the Parties

Garcia contends there is no evidence of a material change in his financial circumstances after the trial court determined his indigency. Because there is no such evidence, the record is insufficient to support the assessment of attorney's fees as costs against Garcia.

The State counters that Garcia was able to post a $200,000.00 bond and gained employment while on bond awaiting trial. Such evidence, the State argues, is some evidence that Garcia had the financial resources to cover at least a portion of his legal expenses.

## B. Court Costs Assessed Against Indigent Defendants

"'A defendant who is determined by the court to be indigent is presumed to remain indigent for the remainder of the proceedings in the case unless a material change in the defendant's financial circumstances occurs.'" *Dieken v. State*, 432 S.W.3d 444, 446–47 (Tex. App.—San Antonio 2014, no pet.) (quoting TEX. CODE CRIM. PROC. ANN. art. 26.04(p) (West Supp. 2014)); *accord Wiley v. State*, 410 S.W.3d 313, 317 (Tex. Crim. App. 2013); *Mayer v. State*, 309 S.W.3d 552, 557 (Tex. Crim. App. 2010). On the other hand,

> "[i]f the court determines that a defendant has financial resources that enable him to offset in part or in whole the costs of the legal services provided, . . . the court shall order the defendant to pay . . . as court costs the amount that it finds the defendant is able to pay."

*Dieken*, 432 S.W.3d at 446–47 (alterations in original) (quoting TEX. CODE CRIM. PROC. ANN. art. 26.05(g)); *accord Mayer*, 309 S.W.3d at 556.

"'[T]he defendant's financial resources and ability to pay are explicit critical elements in the trial court's determination of the propriety of ordering reimbursement of costs and fees.'" *Dieken*, 432 S.W.3d at 447 (quoting *Mayer*, 309 S.W.3d at 556). Our review determines whether the record supports a finding that Garcia's "financial circumstances experienced a material change" and that he "was able to pay the court-appointed attorney's fees." *Id.* (citing TEX. CODE CRIM. PROC. ANN. art. 26.04(p)); *accord McFatridge v. State*, 309 S.W.3d 1, 6 (Tex. Crim. App. 2010). In doing so, "we view the evidence in the light most favorable to the judgment." *Dieken*, 432 S.W.3d at 447 (citing *Mayer*, 309 S.W.3d at 557).

## D. Analysis

We first turn to the trial court's determination that Garcia was indigent.

*1.    Trial Court's Finding of Indigence*

The Texas Code of Criminal Procedure provides that a criminal defendant "without means to employ counsel of my own choosing," may petition the court to appoint counsel to represent him at the county's expense. TEX. CODE CRIM. PROC. ANN. art. 26.04(o) (providing oath of indigence language); *id.* art. 26.05(f) (requiring counties to pay indigents' costs and attorney's fees).

In *Dieken*, 432 S.W.3d at 447, this court analyzed the inherent conflict in article 26.04's mandate with that of article 26.05(g). We concluded that "[a]rticle 26.05(g) authorizes a court to determine that a defendant is able to pay a portion of the costs of his legal services but is unable to pay the balance." *Id.* (citing TEX. CODE CRIM. PROC. ANN. art. 26.05(g) ("If the court determines that a defendant has financial resources that enable him to *offset in part* or in whole *the costs of the legal services provided,* including any expenses and costs, *the court shall order the defendant to pay* during the pendency of the charges or, if convicted, as court costs *the amount that it finds the defendant is able to pay*.")). We must, therefore, determine whether the trial court's conclusion that Garcia was able to pay for part, but not all, of the legal services he received was reasonable.

*2.    Relevant Evidence*

Although the record does not contain any documents determining Garcia's indigency, Garcia was clearly represented by appointed counsel during his trial. The trial court further approved payment of an investigator for the defense. From these documents, we presume Garcia "'remain[ed] indigent . . . unless a material change in [Garcia's] financial circumstances occur[red].'" *Id.* at 448 (second, fourth alterations in original) (quoting TEX. CODE CRIM. PROC. ANN. art. 26.04(p)); *see also Wiley*, 410 S.W.3d at 317; *Mayer*, 309 S.W.3d at 557.

As the State points out, on January 13, 2009, the trial court signed a Special Condition of Release on Bond, setting Garcia's bond at $100,000.00 and ordering full-house arrest and

- 10 -

electronic-monitoring as conditions of bond. On October 28, 2011, the bond was apparently increased to $200,000.00. Although it appears Garcia was able to post bond, the clerk's record does not contain any actual documentation of Garcia's bond.

On May 31, 2012, defense counsel filed a Motion to Modify Conditions of Bond requesting Garcia's electronic monitoring be modified to accommodate his work schedule at a local restaurant. On November 20, 2013, defense counsel's motion to withdraw indicating that Garcia "remains indigent and cannot afford to hire an attorney to represent him [on] appeal" was granted and, the trial court appointed an assistant public defender to represent Garcia on appeal.

### 3. *Sufficient Evidence*

To impose the attorney's fees on Garcia, the trial court had to find, either expressly or implicitly, that a material change occurred and Garcia had the ability to pay $3,110.00 in court costs and attorney's fees. *See* TEX. CODE CRIM. PROC. ANN. art. 26.05(g); *Wiley*, 410 S.W.3d at 317; *Mayer*, 309 S.W.3d at 556. The record does not contain either an express written or oral finding supporting the same. Additionally, the record does not contain a bill of costs outlining a portion for which the trial court reasonably determined Garcia could pay.

Because the record shows Garcia had court-appointed counsel at trial and on appeal, and does not include either an express or implicit finding of a material change in Garcia's ability to pay the attorney's fees, we modify the judgment to delete the assessment of attorney's fees. *See Wiley*, 410 S.W.3d at 317; *Mayer*, 309 S.W.3d at 556.

### CONCLUSION

Having overruled Garcia's ineffective assistance claim, we affirm the trial court's judgment as modified.

Patricia O. Alvarez, Justice

DO NOT PUBLISH

- 11 -



78711

1000

Mark Anthony Garza #891224
GARZA West 4250 Hwy 202
Beeville, Ty 78102

Abel Acosta
Clerk of the Courts of Criminal Appeals of Texas
P.O. Box 12308, Austin, Texas 78711