

# NUMBER 13-22-00113-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

MANUEL MARTINEZ III,                                                          Appellant,

v.

THE STATE OF TEXAS,                                                          Appellee.

On appeal from the 93rd District Court
of Hidalgo County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Longoria
Memorandum Opinion by Justice Benavides**

Manuel Martinez III entered an open plea of guilty to the indicted offense of murder, a first-degree felony, and after a contested punishment hearing, the trial court sentenced Martinez to forty-five years' imprisonment. *See* TEX. PENAL CODE ANN. §§ 12.32(a); 19.02(b)(2), (c). By a single issue, Martinez contends that his trial counsel committed

several errors during the sentencing hearing, and these errors, whether individually or collectively, were so grave that Martinez was effectively denied his constitutional right to counsel. Martinez asks that we overturn his sentence and remand the case for a new hearing on punishment. We affirm.

## I. BACKGROUND

Martinez was indicted for intentionally or knowingly causing the stabbing death of his uncle Reynaldo Villarreal. During the sentencing hearing, the trial court heard from several witnesses, including Martinez.

Martinez testified that he considered his uncle to be his mentor, someone he looked up to and tried to emulate. Martinez also said, however, that his uncle introduced him to methamphetamine when Martinez was released from prison in 2012, and that he worked under his uncle as a member of the Valluco gang. Martinez admitted that he and his uncle were involved in narcotics distribution, and they would "do drops in Tennessee," delivering marihuana and methamphetamine while ingesting methamphetamine along the way. In fact, Martinez and his uncle had returned from one of these drops just prior to the incident. Martinez also acknowledged an incident where his uncle sent him to recover bundles of marijuana from the Rio Grande River.

Leading up to the incident, Martinez was going through a difficult time: he was addicted to cocaine, methamphetamine, and alcohol; he and his wife had separated; he had recently attempted suicide; and he had an outstanding arrest warrant for driving while intoxicated. Martinez said that, on the night in question, he called his uncle to help him

2

turn himself in.

When his uncle arrived, Martinez was "amped up . . . on methamphetamine" and "was seeing stuff." Martinez explained that he had been awake for thirty days doing methamphetamine and was "being schizo." His uncle tried to calm him down, but Martinez could tell that his uncle was "getting mad." Martinez knew his uncle to be an aggressive person, saying he had witnessed his uncle assault people in the past. Martinez said he felt his uncle touch him, and "that's when [he] reacted," believing that his uncle was about to hurt him. According to a report by the Hidalgo County Sheriff's Office, which was stipulated to by Martinez during his guilty plea and admitted into evidence during the punishment hearing, Martinez stabbed his uncle in the "left chest area, right lower leg (near the calf area), left lower leg (near the calf area), [and] right and left forearms."

Martinez acknowledged that he has a prior criminal history. When he was a juvenile, he was charged with possession of firearms for having fourteen guns. As an adult, he served a four-year sentence from 2005–2009 for burglary of a habitation and deadly conduct, and he returned to prison in 2010 on another charge of burglary of a habitation.

Martinez expressed remorse about the incident and attributed his behavior to his drug use, saying he did not mean to kill his uncle. Martinez suggested that twenty-five years would be an appropriate punishment.

Six of the decedent's family members, who were also related to Martinez, testified for the State. Several of these witnesses testified, without objection, that Martinez had a

reputation for being combative with family members, recounting specific instances where Martinez tried to pick fights or exhibited aggressive behavior. The State also elicited, without objection, a sentencing recommendation from four of these witnesses. Two witnesses believed that Martinez should receive the "maximum" sentence, and two witnesses agreed with the State that it should be "a heavy prison sentence."

During closing, the State pointed out that, by his own admission, Martinez is "a habitual offender." The State argued that Martinez's criminal history, combined with the violent nature of the crime, showed that, when free, Martinez posed a threat to the community. The State asked for a life sentence. Martinez prayed for leniency, suggesting that his drug addiction, although not an excuse, should be considered a mitigating factor. Again, he asked for a twenty-five-year sentence.

The sentencing range for murder is imprisonment "for life or for any term of not more than 99 years or less than 5 years." *See id.* §§ 12.32(a); 19.02(c). The trial court sentenced Martinez to forty-five years' imprisonment. No motion for new trial was filed, and this appeal ensued.

## II.     STANDARD OF REVIEW & APPLICABLE LAW

We evaluate claims of ineffective assistance of counsel using the two-pronged test from *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *See Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986) (adopting *Strickland*). An appellant is required to show both: (1) "that counsel's performance was deficient"; and (2) "the deficient performance prejudiced" appellant. *Strickland*, 466 U.S. at 687. "Failure to satisfy either

prong of the *Strickland* test is fatal." *Morrison v. State*, 575 S.W.3d 1, 24 (Tex. App.—Texarkana 2019, no pet.). Accordingly, a court may bypass the first prong, and decide the issue solely on the prejudice prong. *Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

"In order to satisfy the first prong, appellant must prove, by a preponderance of the evidence, that trial counsel's performance fell below an objective standard of reasonableness under the prevailing professional norms." *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). Such a showing "must be firmly founded in the record." *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). We indulge "a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Id.* "In the face of an undeveloped record, counsel should be found ineffective only if his conduct was 'so outrageous that no competent attorney would have engaged in it.'" *Johnson v. State*, 624 S.W.3d 579, 586 (Tex. Crim. App. 2021) (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)). "Trial counsel should generally be given an opportunity to explain his actions before being found ineffective." *Prine v. State*, 537 S.W.3d 113, 117 (Tex. Crim. App. 2017). "Thus, if the record does not contain affirmative evidence of trial counsel's reasoning or strategy, we presume counsel's performance was not deficient." *Johnson*, 624 S.W.3d at 586.

Yet, even if the performance was deficient, such an error does not warrant setting aside the judgment if there has been no prejudicial effect on the outcome. *United States*

*v. Morrison*, 449 U.S. 361, 364–65 (1981). "Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect." *Strickland*, 466 U.S. at 695–96. "Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id.* The test for prejudice requires the defendant to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* In conducting our analysis, we consider the totality of the evidence before the factfinder. *Id.* at 695.

### III. ANALYSIS

Martinez contends that his trial counsel's failure to object to testimony about Martinez's reputation and prior bad acts, as well as the sentencing recommendations by the decedent's family, was objectively deficient. The State responds that, based on the limited record before us, Martinez has failed to demonstrate that his trial counsel's failure to object was not part of a valid trial strategy. The State suggests reasons why Martinez's trial counsel may have viewed this evidence as advantageous for Martinez. Even if we assume that the performance of Martinez's trial counsel was deficient, we conclude that Martinez has failed to show a reasonable probability that the outcome would have been different if this testimony had been excluded.[1] *Id.* at 697

---

[1] We note that Martinez spends his brief focusing on his trial counsel's alleged errors. Other than making a conclusory statement about the reliability of the outcome, Martinez does not provide a meaningful

6

Looking at the totality of the evidence, the trial court heard extensive testimony from Martinez himself about his prior criminal record, his character, and his extraneous offenses and bad acts. *See* TEX. CODE CRIM. PRO. ANN. art. 37.07, § 3(a)(1) (providing that such evidence is "relevant to sentencing"). Martinez acknowledged that he had served two prior prison terms for three separate felony offenses. Upon his release in 2012, instead of reforming his behavior, Martinez admitted that he joined a gang and participated in international and interstate drug trade. Martinez also testified about his illicit drug use. Finally, the trial court also received evidence about the violent nature of the crime. *See id.* (providing that "the circumstances of the offense" are relevant to punishment). In light of this evidence, all of which was properly before the trial court, we fail to see what impression, if any, the complained-of evidence made on the trial court's sentencing determination. *See Hardaway v. State*, 939 S.W.2d 224, 227 (Tex. App.—Amarillo 1997, no pet.) (admitting improper testimony about defendant's reputation during punishment phase was harmless error when "[c]onsidered in the light of all the evidence"); *cf. Cantu v. State*, 842 S.W.2d 667, 690 (Tex. Crim. App. 1992) (finding improper jury argument "harmless beyond a reasonable doubt [because] [n]othing in this argument can be said to have contributed to the jury's assessment of punishment, as the jury had before it copious testimony concerning appellant's prior criminal history, expert testimony as to his future dangerousness, and the heinous facts of the crime itself"). To the contrary, as the State points out, Martinez's forty-five-year sentence is more in line with the sentence

---

analysis of the second *Strickland* prong. *See* TEX. R. APP. P. 38.1(i). Merely showing a deficient performance is only half the job. *See Strickland v. Washington.* 466 U.S. 668, 687 (1984).

he requested than the life sentence requested by the decedent's family. Having failed to show that he was prejudiced by his trial counsel's allegedly deficient performance, Martinez's issue is overruled. *See Strickland*, 466 U.S. at 697.

## IV.    CONCLUSION

We affirm the trial court's judgment.

GINA M. BENAVIDES
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
27th day of July, 2023.